# District of Columbia Public Schools

### Office of Management Services
Tonya M. Butler-Truesdale, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(202) 518-6867
Facsimile: (202) 442-5556

### Confidential

| | |
|---|---|
| KENDALL NESBITT, STUDENT | ) |
| | ) |
| Date of Birth: 11/01/84 | ) |
| | ) |
| Petitioner, | ) Hearing Date: May 13, 2005 and |
| | )                     June 30, 2005 |
| | ) Hearing Request: April 13, 2005 |
| | ) Record Held Open to 07/25/05 |
| | ) **at Petitioner's Request** |
| | ) |
| FRIENDSHIP-EDISON | ) |
| PUBLIC CHARTER SCHOOL | ) |
| | ) Held at: 825 North Capitol St., N.E. |
| Respondent. | )           8th Floor |
| | )           Washington, D.C. 20002 |
| | ) |
| | ) |

## INTERIM ORDER

| | |
|---|---|
| **Adult Student:** | Mr. Kendell Nesbitt. |
| | 1440 Kearney Street, NE |
| | Washington, D.C. 20017 |
| | |
| **Counsel for the Parent/Student:** | Fatmata Barrie, Esquire |
| | Christopher Anwah, Esquire |
| | 1010 Vermont Avenue, N.W. |
| | Suite 600 |
| | Washington, D.C. 20005 |
| | (202) 347-7026; Fax: (202) 347-7108 |
| | |
| **Counsel for DCPS:** | Quinne Harris-Lindsey, Esquire |
| | Office of the General Counsel, DCPS |
| | 825 North Capitol Street, N.E.; 9th Floor |
| | Washington, D.C. 20002 |
| | |
| **Counsel for Friendship/Edison PCS:** | Paul S. Dalton |
| | Dalton, Dalton & Houston |
| | 1008 Pendleton Street |
| | Alexandria, Virginia 22314-1837 |
| | (703) 739-4300; Fax: (703)739-2323 |

08/12/2005  14:08   2024425666                 STUDENT HEARINGS OFF                        PAGE  23/27

*In the matter of Kendall Nesbitt*

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

# INDEX OF NAMES

*Nesbitt v. Friendship Public Charter School*

| | |
|---|---|
| Student | Kendall Nesbitt |
| Child's Parent(s) (specific relationship) | Rhonda Simms |
| Child/Parent's Representative | Fatmata Barrie, Esquire |
| School System's Representative | Quinne Harris-Lindsey, Esquire |
| Director , High Roads Academy | Sharon Redman |
| Counsel for Friendship Edison PCS | Paul S. Dalton |
| Educational Advocate | Sharon Millis |

08/12/2005  08:14   2025166666                                                                       102

08/12/2005  14:08    2024425555              STUDENT HEARINGS OFF                    PAGE  04/27

*In the matter of Kendall Nesbitt*

## Jurisdiction

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Act ("IDEA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

## Introduction

Petitioner is a twenty year-old student formerly enrolled at Friendship Edison Public Charter School. On April 8, 2005, Petitioner filed a *Request for Hearing* alleging that the District of Columbia Public Schools ("DCPS") and Friendship-Edison Public Charter School had failed to provide a Free and Appropriate Public Education by failing to:

1. adhere to a February 11, 2005 Settlement Agreement which required the convening of a MDT/IEP placement meeting within the specified time frame and failing to determine the amount of compensatory education owed to Petitioner.
2. provide Petitioner with an appropriate placement for the past several years
3. inform the student of his due process rights
4. develop an appropriate IEP with goals and objectives to address Petitioner's poor academic performance;
5. provide the appropriate related services in a timely and consistent manner
6. afford the student and parent an opportunity to participate in a placement meeting in a timely manner after determination that he needed a more restrictive environment than Friendship-Edison Public Charter School.
7. provide documents as requested by the student and his advocate;
8. provide FAPE for the past several years.

Hearings were convened on May 13, 2005 and June 30, 2005. The May 13, 2005 hearing was continued due to the illness of counsel for Friendship Edison Public Charter School. On June 30, 2005 counsel for Friendship Edison Public Charter School was ill again and participated by phone. Petitioner presented disclosures labeled KN1-21. Friendship Edison presented disclosures labeled Edison 1-7. DCPS presented a disclosure letter. There were no objections to the disclosures.

## Findings of Fact

The twenty year old, Petitioner most recently scored a 3.5 grade equivalency in Reading Basics, 3.1 math reasoning ability and 3.3 grade equivalency in written expression. *(See Edison-04)* In April of 2002 Petitioner scored a 3.1 in Reading Basics, 2.7 in math reasoning, and 1.5 in written expression. *(See KN-04)* From April of 2002 to March of 2005, an almost three year period, Petitioner and Friendship-Edison engaged in three settlement agreements (02/11/05, 09/27/04 and, 05/06/03). Petitioner's lack of significant academic progress over the thirty-five month period is a distressing testament of failure. Petitioner's testimony that he experienced academic frustration

08/12/2005  08:14    2025165666              ATTY BUTLER TRUESDALE         PAGE  04                103

and social isolation and consistent failure as a student which became dramatically more acute while attending Friendship-Edison is credible. Moreover, it is also credible that the humiliation of this failure would exacerbate Petitioner's truancy proclivity. (See Edison-02). Petitioner enrolled in Friendship-Edison as a tenth grader, yet Friendship-Edison has only disclosed attendance records from August 25, 2003. (See Edison- 02) The hearing officer must then rely on the background information supplied by Petitioner's parent in Petitioner's most recent clinical evaluation during which she reported that Petitioner attended school more regularly in the tenth grade and demonstrated disillusionment in the eleventh grade. Petitioner's parent also reveals during the same clinical interview that the staff of Friendship-Edison already felt that their school was not a good option/placement for Petitioner given his social difficulties. (See Edison-03).

The record indicates that instead of assisting Petitioner and parent in identifying alternative placement opportunities through an IEP/MDT meeting, Friendship-Edison entered several ineffective settlement agreements with the student and eventually retroactively withdrew the student on March 9, 2004 with the withdrawal date of January 16, 2003. Of interest is the fact that the withdrawal form contains no reason for withdrawal. And, given Petitioner's written expressions scores, it is probable that he would not have been able to compose a statement communicating the intensification of his despair regarding his inability to thrive in the placement. The clinical evaluation performed in October of 2004 diagnoses Petitioner with Major Depressive Disorder and his most recent IEP defines his classification as Multiply Disabled- ED/LD) His IEP requires counseling yet, the Friendship-Edison's withdrawal form does not reveal that Petitioner received any counseling regarding his "decision" to withdraw. (See Edison-03; page 6; and, Edison 4, page 1)

Sharon Redman, Director of High Road Academy credibly testified that the student's existing IEP and clinical evaluations have been reviewed and that High Roads is prepared to provide placement which can provide educational benefit.

Respondent called no witnesses on either hearing date to explain the retroactive withdrawal of Petitioner or provide insight regarding what measures the school took to implement the then existing IEP.

## Conclusions of Law

Friendship-Edison did not meet its burden of proving that a Free and Appropriate Public Education was afforded to Petitioner. The findings of fact support the conclusion that Friendship-Edison denied Petitioner a free appropriate public education ("FAPE") by failing to:

1. adhere to a February 11, 2005 Settlement Agreement which required the convening of a MDT/IEP placement meeting within the specified time frame and failing to determine the amount of compensatory education owed to Petitioner;

2. provide Petitioner with an appropriate placement for the past several years;

3. inform the student of his due process rights;

08/12/2025  14:28   2024425555          STUDENT HEARINGS OFF                    PAGE  05/07

*In the matter of Kendall Nesbitt*

4.    develop an appropriate IEP with goals and objectives to address Petitioner's poor academic performance;
5.    provide the appropriate related services in a timely and consistent manner;
6.    afford the student and parent an opportunity to participate in a placement meeting in a timely manner after determination that he needed a more restrictive environment than Friendship-Edison Public Charter School; and,
7.    provide FAPE.

## ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, the testimony presented at the hearing, and representations of the parties' counsel at the hearings, this 27th day of July 2005, it is hereby

**ORDERED,** that Petitioner is hereby placed at High Road Academy on an interim basis. A monthly status report shall be forwarded to this Hearing Officer at the end of each month detailing Petitioner's performance and attendance record for the preceding month by Petitioner's counsel. If Petitioner exceeds more than three days of unexcused absences in any 30 day period, this interim placement shall be immediately suspended and the funding party may immediately file a motion for reconsideration. DCPS shall issue a Prior Notice placing and funding Petitioner at High Roads Academy within five days of the issuance of this Order, including transportation and all other appropriate related services.

**IT IS ALSO ORDERED,** that Friendship-Edison shall convene a MDT/IEP meeting at High Road Academy to discuss and determine compensatory education and to then develop a compensatory education plan within ten days of Petitioner's placement at High Roads Academy for the denial of FAPE within three years of the filing date of the Hearing Request during his enrollment at Friendship-Edison Public Charter School. Compensatory Education shall be funded by Friendship-Edison Public Charter School.

**IT IS FURTHER ORDERED,** that this Order is effective immediately.

Tony M. Butler-Truesdale
Hearing Officer

Date:  August 12, 2005

Issued:  *Aug 12, 2005*

08/12/2025  08:14   2025285566                                                    105

08/12/2005  14:08    2024425556

*In the matter of Kendall Nesbitt*

Copies to:

Fatmata Barrie, Esquire
Law Office of Christopher Anwah, Esquire
1010 Vermont Avenue, N.W.; Suite 600
Washington, D.C. 20005
(202) 347-7026; Fax: (202) 347-7108

Quinne Harris-Lindsey, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.; 9th Floor
Washington, D.C. 20002

Paul S. Dalton
Dalton, Dalton & Houston
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300; Fax: (703)739-2323

6

*KN07*

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT _Kendall Nesbitt_     SCHOOL _High Road ~~Road~~ Academy_   DATE: _10/17/05_

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Rhonda L. Zims-Nesbit | Rhonda Zims Nesbitt | Mother |
| Annie R. Pressley | Annie R. Pressley | Edu Advocate |
| Caryl Banks | Caryl Banks | LSSW, social worker |
| Shawn Redman | S Redman | Director |
| Winsome Taylor | Winsome A Taylor | Transition Director |
| Kendall Nesbitt | Kendall Nesbitt | Student |

On 10/17/05 an MDT/IEP was held at High Road
Academy of NDC. DCPS LEA was present via
phone however since his previous school. he
was Friendship Edison DCPS are not responsible
because Friendship ED ~~it~~ has its own LEA.
Mrs. Redman called the atty for Friendship
Edison (Paul Dalton) left msg. Miss Taylor
was brought in to discuss transcript &
graduation. She also discussed future goals
going to design school and accessing
Program and RSA The discussion of ~~umpire~~

was discussed the 3 yrs of comp ed equals 6,050 hrs
27.50 hrs per day x 5 wk x 44wk/yr = 6,050
of comp ed due to denial of FAPE. Advocate
is requesting that comp ed plan be put into place
immediately after graduation from HEA to commence
no later than Aug. of 2006.

Dec 16, 2004 10:16AM    Dalton, Dalton & Houston                No.          KN-02

Maria Cohn, Ph.D.
& Associates

Maria Cohn, Ph.D.

Katie Hennessy, Psy.D

Julie Kovac, Ph.D

Shelley McLaughlin, M.Ed

Keisha Mack, Ph.D

Nicole Sampson, Ph.D

## CLINICAL EVALUATION

The information contained in this report is confidential and may not
be released without further signed, informed consent.

| | |
|---|---|
| Name: | Kendall Nesbitt |
| Date of Testing: | October 14, 2004 |
| Date of Birth: | November 1, 1984 |
| Date of Report: | October 19, 2004 |
| School: | Friendship Edison Public Charter School – Collegiate Campus |
| Grade: | 12 |
| Age: | 19 years, 11 months |
| Examiner: | Keisha L. Mack, Ph.D. |

### REASON FOR REFERRAL

Kendall was referred for a clinical evaluation by End-to-End
Solutions, the contract agency that is providing special education
services to Friendship Edison Public Charter Schools. The current
testing was requested by Kendall's mother as a result of her
continued concern about Kendall's lack of motivation for school and
concerns about possible depression. Kendall has a history of
failing grades and truancy. Kendall's social-emotional functioning
was assessed in order to provide recommendations that will
promote Kendall's school success and emotional well being. A
vocational evaluation is being completed concurrently with this
evaluation.

### TESTS ADMINISTERED

Beck Depression Inventory – Second Edition (BDI-II)
Clinical Interview
Multidimensional Anxiety Scale for Children (MASC)
Parent Interview – Mother
Review of Records
Thematic Apperception Test (TAT)

Maria Cohn, Ph.D. & Associates

Hamilton Court

1230 31 Street, NW

Second Floor

Washington, D.C. 20007

phone: 202.333.6251

fax: 202.333.6255

www.mariacohnassociates.com



Dec. 16, 2004 10:54AM   Dalton, Dalton & Houston                          No.5509   P. 9

## IDENTIFYING INFORMATION

Kendall is a 19 year-old African American male who lives with his mother and sister (18 years-old) in Washington DC. Kendall has a brother (26 years-old) who does not reside in the home. His father died when he was 18 months old. English is spoken in the home.

## BACKGROUND INFORMATION

Ms. Nesbitt indicated that she received prenatal care throughout her pregnancy. Kendall was carried to full-term and was delivered through vaginal delivery. During delivery Kendall experienced fetal distress which resulted in a delayed delivery. Following delivery, Kendall did not open his eyes for one month, but doctors stated that there were no complications. Ms. Nesbitt indicated that Kendall reached all developmental milestones within normal limits. However, she stated that she always felt that Kendall was different from other children. As a result she treated him with extra care. Kendall is currently in good health. He was in a car accident when he was in eighth grade which resulted in surgery for a broken ankle. He has not experienced any other surgeries, hospitalizations, or major illnesses. Kendall is not taking any medication. There is a maternal and paternal history of diabetes, hypertension, and cancer. There is a paternal family history of bipolar disorder.

Kendall attended Slowe Elementary for pre-kindergarten through sixth grade. He began to experience academic difficulties when he was in kindergarten. Ms. Nesbitt reported that she would receive calls from his teacher with reports that Kendall would walk out of class and go outside to play. By second grade, Kendall's teacher reported that Kendall was lazy, that he was not doing class work, that he would leave class, and that there was a general disinterest in school. Kendall was tested for a learning disability and an IEP was developed. Kendall continued to experience academic and behavioral problems at school. Ms. Nesbitt stated that when she would help Kendall with his homework he was successful. However, he wanted his mother to do every problem with him. When she would not do this he would become frustrated and give up. Kendall attended Bernie Backus Middle School for seventh and eighth grades. Following a card accident in eighth grade, he was home-schooled. Ms. Nesbitt reported that Kendall excelled with the one on one support. However, when he returned to school his grades dropped again. Kendall attended ninth grade at Phelps High School. He transferred to FEPCS– Collegiate in tenth grade. By eleventh grade, Kendall stopped going to school regularly. Ms. Nesbitt suggested home schooling again; however, school staff did not feel that was a good option for Kendall as he already had social difficulties.

Kendall was referred for a clinical evaluation in September 2004 by the multidisciplinary team due to concerns about depression. The current assessment was conducted to assist them in determining if he is experiencing any emotional difficulties that may be interfering with his learning. Kendall is currently receiving special education services as student with a Learning Disability.

Dec.15. 2004 10:17AM    Dalton, Dalton & Houston              No.6533   P. 4

3

## PREVIOUS TESTING
In April and May 2002, a psychological evaluation was completed with Kendall by Q. Graham, Ph.D. Kendall's overall cognitive functioning fell within the Borderline range. Kendall's verbal and perceptual reasoning abilities also reflected Borderline abilities. Kendall's borderline abilities were further supported by his performance on the Test of Nonverbal Intelligence– Third Edition. Kendall demonstrated relative strengths in his short term memory for numbers, combing short term memory wit motor speed, and in understanding the rules for social interaction. His weaknesses were in combining short term memory with mental manipulation and in arithmetic. On the VMI, Kendall demonstrated Low visual-motor integration abilities. Kendall's academic achievement reflected significant deficiencies in word reading, reading comprehension, phonics, math calculations, math reasoning, and written expression. Kendall's performance in spelling and listening comprehension reflected borderline skills. Although below average, his oral expression was an area of relative strength. According to Dr. Graham, emotionally Kendall was struggling with issues of competence that was exacerbated by a low self-esteem and academic deficiencies. Dr. Graham recommended special education services, a vision examination, and counseling.

In December 2001, a speech-language evaluation was completed by Beth Wilkinson, M.S., CF-SLP. Kendall's performance revealed mild deficits in receptive and expressive vocabulary, moderate deficits in receptive language, and mild deficits inexpressive language. Kendall also demonstrated weakness with following directions using different concepts, comprehending word classes and word relationships, and assembling sentences out of words and word clusters. His strengths were in sentence formulation about certain topics and recalling sentences verbatim. As a result of his performance, Ms. Wilkerson recommended speech-language therapy thirty minutes, three times weekly.

## TEST BEHAVIOR
Kendall was evaluated at Friendship Edison Public Charter School (FEPCS)– Collegiate Campus. Kendall presented as a sad and soft-spoken young man. He was easily engaged in the testing process and shared his feelings openly. Throughout testing it was very obvious that Kendall was experiencing a significant amount of sadness as he made minimal eye contact, often looking downward when he spoke. He also became tearful several times as he talked about his difficulties. Kendall also appeared fatigued, almost falling asleep at one point. However, he was able to regroup and complete all tasks appropriately. Overall, Kendall appeared to understand all task expectations and completed all tasks requested of him Kendall's attention, impulse control and frustration tolerance were all within normal limits, within the one-to-one testing situation. Therefore, this examination appears to be a valid representation of his current emotional functioning.

4

**TEST RESULTS:** (See Appendix for tests and scores)
Information regarding social-emotional functioning was obtained by self-report,
parent-report, clinical observation during testing, and projective and objective test
measures. Overall, Kendall's responses indicated that he is a young man who is
experiencing a significant amount of sadness surrounding his school, home, and
personal life. Kendall is very aware of his academic limitations and is very saddened
by his inability to overcome them. Although Kendall wants to succeed academically,
it appears that he became disillusioned by school and his ability to succeed and
therefore gave up. Kendall explained to the examiner that school became too
difficult for him and he did not feel that he was getting the help that he needed.
Kendall also appears to be embarrassed by his difficulties, as a result had difficulties
asking for the helped he needed. This embarrassment was further supported when
the examiner asked him about his academic difficulties- he looked down and
stuttered as he talked about his troubles. Additionally, he initially attempted to
minimize his difficulties, but as the examiner questioned him, he admitted that he
was struggling in several areas. As a result of his lack of success in school and his
inability to overcome the difficulties, Kendall has developed a poor sense of his
worth and competency.

It appears that Kendall began to experience sadness when he began to realize he
was homosexual when he was in tenth grade. Although he was never a very social
person, Kendall cut off most of his friends and stopped going to church, something
that he had enjoyed doing for several years. By eleventh grade he began
demonstrating symptoms of depression. Kendall stopped going to school all
together, no longer cared about his appearance, slept all day, and was generally
unproductive. Kendall's mother experienced significant difficulties dealing with
Kendall's homosexuality and made this know to Kendall. She has also admitted to
treating Kendall differently. Kendall has also experienced rejection by other family
members as a result of his disclosure. It appears that Kendall was already
experiencing sadness and confusion over his sexual identity. This was compounded
by his family's difficulties with accepting him. Kendall was already experiencing low
self-esteem surrounding his academic difficulties which caused him to withdraw. It is
likely that Kendall was fearful of experiencing further scrutiny by his peers once he
began to question his sexual identity. As a result, Kendall withdrew even further and
has become more depressed. Ms. Nesbitt has expressed worries and fears about
Kendall's naïveté when it comes to meeting other people who are gay. It is likely
that Kendall is attempting to find people who are similar to himself so that he feels
more comfortable with whom he is. It also appears that Kendall is searching for
acceptance and love which has resulted for him attempting to meet people in ways
that are not always safe, including chat rooms on the internet.

Kendall's sadness is worsened by a recent break up. In September 2004, Kendall
cut himself following the break up with his partner. However, it does not appear that
Kendall had true intentions on killing himself as he told his mother that he wanted to
check himself into a hospital and the cuts were superficial. Kendall was not
hospitalized as his mother was fearful that he would be placed on drugs. Since this

time, Kendall admitted to still having thoughts of suicide, but stated that he would not do it. Kendall's sadness surrounding the break up is further exacerbated by his inability to maintain a friendship with his former partner, something he strongly desires. This was supported on a story telling task where Kendall described a couple having an argument. In the story one character attempts to talk things out with her partner, however, he walks away, never to return. Kendall's inability to salvage this relationship appears to further contribute to his negative feelings about himself as he made statements that indicate that he takes some blame for the loss. In addition, it appears that Kendall has not totally accepted the break up. Throughout the assessment he made reference to wanting someone else to talk to his former partner in the hopes that this would change things.

To further assess Kendall's emotional well being, the Bender Depression Inventory – Second Edition (BDI-II) and the Multidimensional Anxiety Scale for Children (MASC) were administered. Kendal's responses on MASC did not result in any significant elevations. As previously stated Kendall is experiencing significant symptoms of depression and his responses on the BDI-II indicate that his current level of depression is in the Severe range. Kendall indicated positive endorsements for most items, except loss of interest in sex, pessimism, and punishment feelings. Kendall's lack of endorsement on items assessing pessimism indicates that Kendall does see some hope for his future, which may positively affect his prognosis.

Kendall is an extremely sad young man who is struggling with being accepted by his family and friends as a result of his revealing that he is homosexual. He is also having a difficult time coping with his lack of academic success and a recent break up. Although Kendall has admitted to having thoughts of suicide, he assured the examiner that he did not want to die and agreed to not do any harm to himself as his mother attempts to find a therapist for him. Although Kendall is experiencing significant sadness and depression he is not experiencing hopelessness as he indicated that he wants to get help and did not endorse pessimistic feelings on the BDI-II. Additionally, he was able to articulate future plans of being a fashion designer. Although, this is an indication of a good prognosis for Kendall, it is very pertinent that Kendall receive the appropriate treatment to assist with his ongoing depression.

## SUMMARY
Kendall is a nineteen year-old young man, who was referred for an evaluation to further assess his emotional well being as he demonstrates symptoms of depression and lacks motivation. The results of the social-emotional testing indicated that Kendall is a young man who is experiencing significant sadness surrounding his sexual identity and academic difficulties. It appears that Kendall's sadness began with his poor academic success and has been intensified by the difficulties he has experienced since revealing that he is gay. His family has had a hard time accepting him and his partner recently broke off their relationship. As a result of Kendall's ongoing difficulties he is currently experiencing clinical depression. Kendall's depression is in the Severe range based on his responses on the BDI-II. Kendall

6

has also had suicidal ideation but has stated that he wants to live and wants to get help. It is imperative that Kendall receive therapeutic as well as possible medical intervention to assist him with his symptoms of depression and to develop more appropriate coping skills.

Based on the results of the current assessment, Kendall meets the criteria for a diagnosis of Major Depressive Disorder and should be provided with services as a student with an Emotional Disturbance. The MDT should consider the classification of Multiply Disabled to account for his emotional and learning needs.

## DIAGNOSTIC IMPRESSION
296.23       Major Depressive Disorder, Single Episode

## RECOMMENDATIONS
1. Based on the evaluation the MDT team should continue providing Kendall with special education services to address his academic difficulties and should consider revising his classification to Multiply Disabled to reflect both his emotional and learning disabilities.

2. Given the severity of Kendall's current emotional distress, he should be provided with individual counseling two times per week (45-60 minute sessions). Once his mood has stabilized, services may be decreased to once per week at the discretion of the treating therapist.

It was a pleasure working with Kendall.   If you have any questions regarding this report, please feel free to contact Dr. Mack or Dr. Cohn at (202) 333-6251.


Keisha L. Mack, Ph.D.                          Maria Cohn, Ph.D.
Examiner                                       Licensed Psychologist
                                               Supervisor

Dec 16, 2004 10:19AM    Dalton, Dalton & Houston          No.5539   P. 9

## APPENDIX

(Scores are based on national norms)
S-S/A= Standard score by age; P/A= Percentile by age
SS= Standard score; G.E. = Grade equivalent
A.E. = Age equivalent

### Beck Depression Inventory – Second Edition
Scores 29 - 63 = severe range

Total Score = 39

### Multidimensional Anxiety Scale for Children
T-scores>65 = clinically significant

|  | T-score |
|---|---|
| Physical Symptoms | |
| Tense/Restless | 52 |
| Somatic/Autonomic | 48 |
| Total | 50 |
| | |
| Harm Avoidance | |
| Perfectionism | 56 |
| Anxious Coping | 51 |
| Total | 52 |
| | |
| Social Anxiety | |
| Humiliation/Rejection | 55 |
| Performance Fears | 51 |
| Total | 53 |
| | |
| Separation/Panic | 45 |
| | |
| MASC Total | 51 |
| | |
| Anxiety Disorder Index | 47 |

FROM :                          FAX NO. :                    Mar. 22 2005 25:39PM

KN-C9
5/3/65

## EDUCATIONAL EVALUATION

Name: Nesbitt, Kendall                          School: FECA
Date of Birth: 11/01/1984                        Grade: 12.6
Age: 20 years, 4 months                          Examiner: Kya Mathews
Sex: Male
Date of Testing: 03/01/2005

### TESTS ADMINISTERED

*WJ III Tests of Achievement*

These tests provide measures of Kendall's academic achievement. A description of each ability is provided. His performance in each broad category is compared to grade peers using a standard score range. Kendall's proficiency is described categorically, ranging from negligible to limited; his test performance can be generalized to similar, non-test, grade-level tasks. Additional interpretation of academic task performance is provided.

### ACHIEVEMENT

Basic Reading Skills includes sight vocabulary, phonics, and structural analysis skills. Kendall's basic reading skills standard score is within the very low range (percentile rank range of 1 to 2; standard score range of 64 to 69) when compared to others in his grade. His basic reading skills are very limited; tasks measuring reading skills above the grade 4.3 level will be quite difficult for him.

Written Expression measures Kendall's fluency of production and quality of expression in writing. Kendall's written expression standard score is within the very low range (percentile rank range of <1 to 1; standard score range of 57 to 65) for his grade. His overall ability to express himself in writing is very limited; writing fluency tasks above the grade 4.9 level will be quite difficult for him.

Reading Comprehension measures Kendall's reading vocabulary and his ability to comprehend connected discourse while reading. Kendall's reading comprehension standard score is within the very low range (percentile rank range of <1 to 1; standard score range of 56 to 64) for his grade. His reading comprehension is very limited; reading comprehension tasks above the grade 5.3 level will be quite difficult for him.

Broad Written Language includes production of written text, including spelling ability, writing fluency, and quality of written expression. Kendall's written language standard score is within the very low range (percentile rank of <1; standard score range of 52 to 60) for his grade. His overall written language ability is very limited; tasks measuring effective expression in written language above the grade 4.9 level will be quite difficult for him.

#### Academic Processing

Kendall's academic skills are very limited. Specifically, his sight reading ability, math calculation skill, and spelling are very limited.

Academic Applications. Kendall's writing ability is average. His passage comprehension ability is limited. His quantitative reasoning is negligible.

### SUMMARY

Educational Evaluation                                    Page 2
Nesbitt, Kendall
March 1, 2005

When compared to others at his grade level, Kendall's academic skills and his ability to apply those skills are both within the very low range.

When compared to others at his grade level, Kendall's performance is very low in broad reading, basic reading skills, reading comprehension, written language, and written expression.

117

FROM :                          FAX NO. :                   Mar. 22 2005 06:39PM  P5

Educational Evaluation
Nesbitt, Kendall
March 1, 2005

TABLE OF SCORES: *Woodcock-Johnson III Tests of Achievement*
Report Writer for the WJ III, Version 1.1
Norms based on grade 12.6

| CLUSTER/Test | Raw | GE | EASY to DIFF | | RPI | PR | SS(68% BAND) | | AE |
|---|---|---|---|---|---|---|---|---|---|
| BROAD READING | – | 2.7 | 2.3 | 3.2 | 0/90 | <0.1 | 50 | (47-53) | 8-0 |
| BROAD WRITTEN LANG | – | 3.6 | 2.6 | 4.9 | 16/90 | 0.2 | 56 | (52-60) | 8-9 |
| BASIC READING SKILLS | – | 3.5 | 2.9 | 4.3 | 1/90 | 1 | 66 | (64-69) | 8-9 |
| READING COMP | – | 3.7 | 2.7 | 5.3 | 18/90 | 0.4 | 60 | (56-64) | 8-1 |
| WRITTEN EXPRESSION | – | 3.3 | 2.2 | 4.9 | 20/90 | 0.5 | 61 | (57-65) | 8-9 |
| ACADEMIC SKILLS | – | 3.9 | 3.2 | 4.8 | 5/90 | 0.3 | 58 | (55-61) | 9-2 |
| ACADEMIC APPS | – | 3.9 | 2.8 | 5.5 | 25/90 | 2 | 69 | (66-72) | 9-4 |

Form B of the following achievement tests was administered:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Letter-Word Identification | 50 | 4.3 | 3.7 | 5.1 | 4/90 | 1 | 67 | (64-70) | 9-8 |
| Reading Fluency | – | <K.8 | <K.8 | <1.2 | – | – | – | | <6-1 |
| Calculation | 14 | 3.5 | 2.8 | 4.4 | 4/90 | 0.2 | 58 | (52-63) | 9-0 |
| Spelling | 30 | 3.9 | 3.1 | 4.9 | 10/90 | 1 | 66 | (62-71) | 8-9 |
| Writing Fluency | 8 | 2.5 | 1.8 | 3.3 | 1/90 | 0.2 | 57 | (53-61) | 7-9 |
| Passage Comprehension | 29 | 4.2 | 3.1 | 6.4 | 31/90 | 4 | 74 | (69-79) | 9-6 |
| Applied Problems | 30 | 3.1 | 2.5 | 3.9 | 2/90 | 1 | 63 | (58-67) | 8-8 |
| Writing Samples | 17-C | 8.1 | 3.3 | >18.0 | 83/90 | 21 | 88 | (78-98) | 13-6 |
| Word Attack | 11 | 2.3 | 2.0 | 3.0 | 6/90 | 2 | 70 | (67-73) | 7-10 |
| Picture Vocabulary | 28 | 7.5 | 5.3 | 10.1 | 56/90 | 19 | 87 | (83-91) | 13-0 |
| Reading Vocabulary | – | 3.2 | 2.3 | 4.7 | 10/90 | 1 | 63 | (59-66) | 8-9 |

FROM :                          FAX NO. :                    Mar. 22 2005 05:42PM  P6

Educational Evaluation
Nesbitt, Kendall
March 1, 2005

### Descriptions of WJ III Tests Administered

*Letter-Word Identification* measured Kendall's ability to identify letters and words. He was not required to know the meaning of any word.

*Reading Fluency* measured Kendall's ability to quickly read simple sentences, decide if the statement is true, and then circle Yes or No. He was asked to complete as many items as possible within a 3-minute time limit.

*Calculation* measured Kendall's ability to perform mathematical computations. The items required him to perform addition, subtraction, multiplication, and division operations.

*Spelling* measured Kendall's ability to write orally presented words correctly.

*Writing Fluency* measured Kendall's skill in formulating and writing simple sentences quickly. He was required to write sentences relating to a given stimulus picture that includes a set of three words. This test had a 7-minute time limit.

*Passage Comprehension* measured Kendall's ability to understand what is being read during the process of reading. Test items required Kendall to read a short passage and identify a missing key word that makes sense in the context of the passage.

*Applied Problems* measured Kendall's ability to analyze and solve math problems. To solve the problems, he was required to listen to the problem, recognize the procedure to be followed, and then perform relatively simple calculations. Because many of the problems included extraneous information, Kendall needed to decide not only the appropriate mathematical operations to use but also what information to include in the calculation.

*Writing Samples* measured Kendall's skill in writing responses to a variety of demands. He was asked to produce written sentences that were evaluated with respect to the quality of expression. Kendall was not penalized for any errors in basic writing skills, such as spelling or punctuation.

*Word Attack* measured Kendall's skill in applying phonic and structural analysis skills.

*Picture Vocabulary* measured Kendall's oral language development and word knowledge. The task required him to identify pictured objects. This was primarily an expressive language task at the single-word level.

*Reading Vocabulary* measured Kendall's skill in reading words and supplying appropriate meanings. He was administered three subtests: Synonyms, Antonyms, and Analogies. The first subtest required Kendall to read words and provide synonyms. The second subtest required him to read words and then provide antonyms. The third subtest required Kendall to read three words of an analogy and then provide the fourth word to complete the analogy.

FROM :                          FAX NO. :                    Oct. 26 2004 03:33PM

KN-10

Friendship-Edison Collegiate Public Charter School
4094 Minnesota Avenue, NE
Washington, D. C.  20019

## VOCATIONAL EVALUATION

Student:  Kendall Nesbitt

DOB:  11/1/84

Age:  19     Gender:  Male     Grade:  N/A - Non-Attending

Date of Evaluation:  10/12/04

Evaluator:  Helena Newman, Vocational Evaluator

REASON FOR REFERRAL:  Kendall was referred for a vocational evaluation to determine his vocational aptitudes, interests, and learning styles.  This assessment will support preparation for transition from school to the world of work and will facilitate post-secondary educational career planning and preparation.

### DATA SOURCES/ASSESSMENT INSTRUMENTS

-School Record Review
-Student Interview
-Reading-Free Interest Inventory- Revised
-Interest Inventory
-Career Finder Questionnaire
-Occupational Outlook Handbook, 2004

## BEHAVIOR DURING THE ASSESSMENT

   Kendall's parent requested that the evaluator contact him directly to schedule this evaluation.  Kendall was very responsible in scheduling and made follow-up and confirmation contacts as appropriate per the requests of the evaluator.
   Kendall entered the testing site located at the local library.  He responded to the test directions and items with sustained attention.  Additionally, Kendall responded to the examiner's requests for expanded answers and details.  This assessment, therefore, is determined to represent an accurate measure of his aptitudes, interests, and learning styles.  This is a Level I Vocational Assessment.  The presenting data is sufficient and no other data is needed at this time.

## STUDENT INTERVIEW

Kendall indicates that he finished the 11th grade at Friendship-Edison Collegiate Public Charter School. He attended the school from September to December of SY 2003-04, Grade 12, and dropped out thereafter. Kendall reports that he became very frustrated with the work demands and requirements and that "no staff persons helped" him. He states that he has not completed any community service hours.

Currently, Kendall is working as a security guard for the Federal Express Company and has held the position since July 2004. This represents his first job experience. Kendall reports that he likes seeing/meeting people and checking IDs and the work is easy. Shift hours in this position enable Kendall to sleep during the day and he does not have to get up early.

Kendall plans to obtain his GED, continue to work, and begin seeking training for a career. He desires to become a fashion designer and create his own line of clothing/fashions. Kendall will also consider a career as an interior designer.

In his spare time, Kendall enjoys reading fashion design magazines and interacting with friends.

## REVIEW OF SCHOOL RECORDS

Pre-Referral Checklist of 7/28/04 reveals that Kendall has grades falling significantly, skipped classes excessive tardiness; and displays a low level of motivation and effort when he attended school. A Transition Action Plan, SY 2003-4, indicates that Kendall has 20.57 graduate hours out of 27.00 required credit hours. He selected a high school diploma by the age of 21 as a graduation option. Courses that are indicated for graduation are DC History, Physics, Economics, Transition Math. Reading fundamentals and Physical Education (.5 credits). Plans for graduation indicate entry in the Job Corps Program. Referrals sources needed include DC Rehabilitation Services Administration., Vocational Rehabilitation Transition Services for In-School Youth and Youth Services. Kendall was scheduled to attend the Job Corps orientation on December 4, 2004. The next step is indicated to include the use of career interest surveys/vocational evaluations to arrange for completion of community service hours and vocational training from Bennett Institute.

A Psychological Evaluation of 5/902 indicates that Kendall demonstrates uneven academic performance. It reports that there is no significant difficulty in school except for a dislike for attending school. Kendall has a low level of interest in school and academic materials. He did not identify any part of the school curriculum that he found interesting. Nor was a career choice identified when he completed school. It is reported that Kendall became easily fatigued and fell asleep during the evaluation. Also, it was observed that he is unable to sustain concentration for longer that approximately an hour. Kendall's academic deficiencies make it difficult for him to meet the expectations of a high school student. He is reported to have a learning disability in the area of visual motor integration. Kendall devotes his energy to concealing his academic weaknesses. It is also reported that he can become successful as he transitions into independent living, but he must have intense academic intervention in order to do so. A vision examination

and counseling services for self-esteem and self confidence are recommended.

A Speech and Language Evaluation of November 27, 2004 reveals mild deficits in receptive and expressive vocabulary, moderate deficits in receptive language, and mild deficits in expressive language. Speech and Language services are recommended for thirty-minute sessions per week to address difficulties with receptive/expressive vocabulary, following directions, comprehending word relationships, and sentence assembly.

The Individualized Education Program of 1/8/04 indicates 15 hours of specialized instruction, and one hour each of speech and language therapy and counseling. Academic goals are in the areas of written language, mathematics, and reading. Transition goals/objectives focus on demonstration of knowledge and understanding of career options, opportunities, and requirements. DCPS Transition Services Plan of 1/7/04 indicates that Kendall would like to work in the areas of barbering, fashion, or cosmetology. He desires to live at home with his parent. Careers of study leading to Kendall's post-high school goals are career exploration and job-seeking skill training. Coordinated activities and strategies are indicated as the following:

-development of a plan for completion of community services hours.

-student investigation and application of post-secondary vocational/career training programs

-development by student of self-advocacy and independent living skills necessary to live as an adult

-participation in personal management workshops/activities which focus on health, hygiene and social life skills

-participation and review of vocational/career evaluations

Multidisciplinary Notes of 1/8/04 reveal that Kendall has had excessive absences in all of his classes. This is having a negative impact on his academics. The Team discussed alternative options for Kendall(I.e. beauty school, Job Corps, and vocational school). It was also agreed by the Team that Kendall should continue to work towards his high school diploma.

## CAREER INTERESTS

The results of the Interest Inventory indicate that Kendall scored the highest interest in the "Sales(Persuasive)" area. This career includes an interest in selling equipment, merchandise, products and services through the use of persuasion and effective sales techniques. Examples of occupations in this field are Salesperson, Vendor and Demonstrator. The areas of "Authority", "Humanitarian" an"Leading/Influencing(Social and Business)" fields tied as secondary areas of high career interest. The "Authority" field involves an interest in the use of authority to safeguard people and property.

Examples of occupations in this field are Policeman, Detective, Sheriff, and Security Guard. The ""Humanitarian" field includes an interest in helping people with their mental, social, spiritual, physical, and vocational needs. Some examples of occupations in this field are Counselor, Social Worker and Minister. The "Leading and Influencing (Social and Business)" field involves an interest in leading and influencing others through activities involving good verbal and/or numerical abilities and using the communication of ideas. Examples of occupations in this field are Accountant, Educator, Business Manager, and Librarian. Kendall indicates that he had high interest in modeling clothes in a fashion show; becoming a security guard; operating a sewing machine; and being a manager or supervisor of a department in a store. In addition, he has high interest in explaining new products to customers in a store (involving clothes sales);selling clothing in a department store; and attaching parts to a sewing machine.

The results of the Career Finder Questionnaire reveal that Kendall has high interest in a career where he can understand people, lead and help others, and make things. He also has high interest in a career involving the care of animals. In his work, Kendall prefers a career where he can move around; there is a change often from one task to another; and he can do many different tasks each day. However, he states that he does not mind sitting and desires a combination of both movement and non-movement in this work life. Kendall also has high interest in a career that will afford him an opportunity to meet people. He is interested in traveling in his career and would like to go to New York and Paris to be a part of the fashion world. Kendall is willing to work hard in a career, do something special, and reach high goals. In his work, he would like to decide how tasks are to be completed. Kendall would like to dress in semi-formal attire on the job. He is willing to go to college or vocational school to study fashion designing.

The Reading-Free Interest Inventory-Revised results indicate that Kendall has a medium level of interest in a career involving the area of "Personal Services". This are relates to an interest in occupations concerned with tendering to a variety of services to individuals. These services rendered are personal in the sense that there is a fairly close and often personal contact between the providers and the recipients of the services.

## LEARNING STYLES

The results of the Learning Styles Inventory indicate that Kendall is a visual, auditory, and kinesthetic learning. He has to see and hear instructional material before it makes sense to him. Therefore, Kendall would therefore derive benefit from using written text, auditory/video tapes, workbooks, models, illustrations, and pictures. In addition, Kendall must experience what he is learning. He would, therefore. benefit from group/individual projects, hands-on assignments, and real life simulations.

The IEP of 1/8/04 indicates that Kendall requires extended time, a small group, and use of a calculator/alpha-smart as modifications and accommodations for testing. Also, provision parallel instruction is recommended.

## OCCUPATIONAL OUTLOOK

Kendall is interested in a primary career as a fashion designer and a secondary career interest

123

as an interior designer. Fashion designers design clothing and accessories. Most work for apparel manufacturers, adapting men's and women's. and children's clothing fashions for the mass market. Interior designers plan the space and furnish the interiors of private homes, public buildings, and commercial establishments, such as offices, restaurants, hospitals, hotels, and theaters. In fashion design, some career preparation, such as a 2-or 4-year degree. is usually needed to enter the field. Interior designers generally are required to have a college education. Despite projected faster than average employment growth, designers are expected to face competition for available positions because many talented individuals are attracted to career as designers.

## ANALYSIS OF ASSESSMENT RESULTS

Kendall reports that he is interested in the field of fashion design as a primary career and that of interior design as a secondary career. On one of the interest measures, he obtained a high interest in the field of law enforcement. Kendall currently works on a part-time basis as a security guard. On one of the interest measures, he scored at a high interest in the "Leading/Influencing" field. This is associated with the interest hat Kendall has in the sales of his merchandise as a fashion/interior designer. On two of the interest measures, he had a high interest in a career associated with the humanitarian field. Interest in the care of animals was evident on one of the interest measures. On one of the measures he had a high interest score in a career providing personal services to others and using art.

Based upon the results of this evaluation, the following career areas are recommended:

| Primary | Secondary | Supplementary |
|---|---|---|
| Fashion Design | Security Guard | Veterinary Assistant |
| Interior Designer | Counselor Aide | Veterinary Technician |
| Merchandise Displayer | Clothing Salesman | Fashion Show Model |
| Merchandise Buyer | Clothing Businessman | Hair Designer |
| | Department Store Manager | Make-Up Designer |
| | Security Officer | |

## RESOURCES TO EXPLORE/INVESTIGATE

Kendall should investigate the following resources for information related to fashion and interior design:

For a List of Accredited Schools of Art and Design
   National Association of Schools of Arts and Design, 1120 Roger Bacon
   Drive, Suite 21, Reston, Virginia  20190

FROM :                          FAX NO. :                    Oct. 26 2004 23:37PM  P7

For Information on Degree, Continuing Education, and Licensure Programs
in Interior Design
  American Society of Interior Designers, 608 Massachusetts Avenue, NE,
  Washington, DC  20002-6006


## RECOMMENDATIONS

-Consideration of completion of high diploma requirements including the
 investigation of the External Diploma Program and the D. C.P.S. adult
 programs which are held during the evenings. Kendall is still eligible for
 entry in D.C.P.S. programs until age twenty-two (22) and is close to completion
 of the requirements for a high school diploma.

-Development of a plan to obtain community service hours if Kendall selects to
 complete a high school diploma program.

-Consideration of entry in a day/evening GED program to obtain a high diploma
 equivalent.

-Tutoring in all academic areas to support, high school diploma granting, GED and/or
 postsecondary studies.

-Exploration/Investigation of the resources identified in this report for
 information on fashion/interior design.

-Shadowing of employers/employees in the fashion/interior design business
 (contact:  Oxford Street (301)899-2075, African Fashion Designers Association
 (301) 699-9524, and Pat's Unisex Designers (301) 333-8001).

-Involvement of Rehabilitation Services Administration immediate in postsecondary
 planning.  The planning should also include provision of career counseling to assist
 with guidance for college/vocational school entry and career options.  A representative
 should be invited to the school and participate in the upcoming IEP meeting.

-Assignment of a mentor to provide emotional and educational support.

-Training in the use of a sewing machine to support a career in fashion design (contact:
 Destiny Unlimited, 5625 Allentown Road, Suite 106, Camp Springs, Maryland,
 (301) 899-0697).

-Exploration of community college as an partial avenue for fashion/interior design.
 Community colleges provide opportunities for students to receive academic

remediation experiences.

-Computer literate training to prepare for the graphic technology required in the field of fashion and interior design.

-Consideration of psychological counseling to address academic anxiety and frustration issues that will impact on performance in career training experiences.

*Helena Newman*

Helena Newman, Vocational Evaluator

10/19/04

Date

KN-11

CONFIDENTIAL

MULTIDISCIPLINARY TEAM CONFIDENTIAL REPORT
Public Schools of the District of Columbia
Special Education Branch/LEA

ID NUMBER:
BIRTHDATE:   11-1-84

Name of pupil: Nesbitt, Kendall Jamaal          Age: 8 yrs.    Gender: male

Street Address: 1440 Kearny St. NE
                Washington, DC   20017

School: Slowe Elementary     Grade: 2nd     Teacher: Mr. Coss

Father: Jerome Nesbitt(deceased)    Mother: Rhonda Sims-Nesbitt

Parent, legal guardian, or adult with whom pupil lives: Rhonda Sims-Nesbitt

Relationship: Mother      Phone: Home 635-0464  Work 301-231-0850

Study requested by:

Date of school planning conference:    (Summary attached)

Reason for referral (summary of behavioral observations and school history):

Kendall is an eight(8) year old male student who has repeated the first grade
and is now in the 2nd grade at Slowe Elementary School.  He is working below
grade level; he is unable to transfer knowledge and concentrate on a given
task.

Parental consent: yes

Agencies active with family: (none)

Other services involved:


| Service | By | Title | Rpt Date |
| --- | --- | --- | --- |

Page 2
Washington D.C. Public Schools
Special Education Program
Kendall Nesbitt

K 11-12

DATE OF IEP MEETING: 6/11/93

PERIOD OF PLAN: From 9/93 To: 6/94

ANNUAL REVIEW DATE: 6/94                    TYPE OF IEP: initial

SS #: 0000000                               ID #: 0000000  7347054

DATE OF BIRTH: 11/1/84                       AGE: 8            SEX: M

ADDRESS: 1440 Kearny Street, N.E.

SCHOOL/PROGRAM: Elementary School           GRADE: 2nd

PARENT/GUARDIAN: Ms. Rhonda Nesbitt

STUDENT'S PRIMARY LANGUAGE: English

TELEPHONE, HOME: 635-0464
          WORK: 0000000

DISABILITY CLASSIFICATION: Learning disabled

RECOMMENDED PROGRAM SERVICE LEVEL: Level III- Separate Class

| RELATED SERVICE | SESSIONS/WK. | MINUTES/SESS. | GROUP/INDIV. |
| --------------- | ------------ | ------------- | ------------ |
| Speech therapy  | 2            | 30            | group        |

RECOMMENDED MAINSTREAM EDUCATION COURSES/SUBJECTS: Physical education Music
              Art Science

HOURS PER WEEK SPECIAL EDUCATION AND RELATED SERVICES: 20

HOURS PER WEEK STUDENT INTEGRATED WITH NONDISABLED PEERS: 10

HOURS PER WEEK IN PHYSICAL EDUCATION: 1 her per wk.

SUGGESTED MODIFICATIONS, AIDS, OR ACCOMODATIONS FOR PARTICIPATION IN REGULAR
EDUCATION: none

128

Page 3
Washington D.C. Public Schools
Special Education Program
Kendall Nesbitt

PRESENT LEVELS OF EDUCATIONAL PERFORMANCE

| SKILL | TEST DATE | TEST ADMINISTERED | SCORE |
|-------|-----------|-------------------|-------|
| PERCEPTUAL MOTOR | 4/20/93 | appropriate test *Bender* AE 6.0-6.5 | |
| COMMUNICATIVE | 6/11/93 | appropriate test *ROWPVT* LA 7.6 | |
| COMMUNICATIVE | 6/11/93 | appropriate test *EOWPVT* LA 6.2 | |
| COMMUNICATIVE | 6/11/93 | appropriate test *TAPS* LA 5.1 | |
| READING | 5/8/93 | Woodcock-Johnson | GE 1/6 |
| MATH | 5/8/93 | Woodcock-Johnson | GE 1.7 |
| WRITING | 5/8/93 | Woodcock-Johnson | GE 1.4 |

STRENGTHS: Relative strengths were noted in receptive vocabulary skills and abstract reasoning ability.
WEAKNESSES: Defictis were noted in the area of visual motor integration skills.  Auditory processing and expressive vocabulary skills were significantly below age exptectancy. Presently, Kendall is experiencing difficulty in all academic areas. He has a short attention span and frequently exhibits inappropriate behavior in class.

129

KN-13

*Suspected* CONFIDENTIAL

SPECIAL EDUCATION BRANCH, LEA
DISTRICT OF COLUMBIA PUBLIC SCHOOLS

AUTHORIZATION FOR CONFIDENTIAL
ASSESSMENT

==================================================================

Student's Name: _Nesbitt, Kendall_  Student I.D.#: _734 7054_
　　　　　　　　(Last)　　(First)　　(MI)

Parent/Guardian: _Mrs. Rhonda Nesbitt_  Work Phone: _301-231-0850_
Address: _1440 Kearny Street, N.E._  Home Phone: _202-635-0464_
Current School: _Slowe E.S._  Date of Birth: _11-1-84_
Home School: _"_　　　　　　　　　　　Chron. Age: _8_
Primary Language: _English_  Grade: _2nd._
Classroom/Homeroom Teacher: _Mr. Cooper_
Form completed by _Carolyn A. Ellis  Coordinator/Liaison  5-4-93_
　　　　　　　　　Name　　　　　　Title/Position　　　　Date

==================================================================

TYPE OF ASSESSMENT:　(Check each category with yes or no)

| Yes | No | | Yes | No | |
|-----|----|----|-----|----|----|
| ✓ | ___ | Educational | ___ | ___ | Vision |
| ✓ | ___ | Speech/Language | ___ | ___ | Auditory |
| ___ | ___ | Occupational Therapy | ✓ | ___ | Vocational |
| ___ | ___ | Physical Therapy | ✓ | ___ | Psychological |
| ___ | ___ | Other (specify)_____ | | | |

In completing the form, the above named person certifies that he/she has explained to the parent(s)/
guardian(s) and student (if 18 or older) that:　(Check all that apply)

1. _✓_　The individual assessment has been requested for the following reason:

_Kendall has repeated the first grades and is presently performing below grade expectancy._

2. The obtained information will be used to:

_✓_ help determine whether there is a disability

_✓_ help determine educational placement

_✓_ develop instructional/program recommendations

Form 6

130

SPECIAL EDUCATION BRANCH, LEA                    AUTHORIZATION FOR CONFIDENTIAL
DISTRICT OF COLUMBIA PUBLIC SCHOOLS                                  ASSESSMENT
================================================================================

3.  Reports will be distributed to the:

    ____student (if 18 or older)              ✓ parents

    ✓ school confidential file                 ✓ Special Education Center

    ____central office                        ____other  (specify)

4.  ✓  record of the results will be maintained in a confidential folder and access to the report(s)
        will be granted to DCPS staff on a need-to-know basis.  A record will be maintained
        documenting the name, position and reason for each access.  Parent(s)/guardian(s) and
        eligible students may request/authorize release to another agency/professional.

5.  ✓  assessment results will be shared with parent(s)/guardian(s) prior to taking any action and
        parent(s)/guardian(s) and eligible students have the right to challenge the accuracy of the
        report contents and to have information which is proven inaccurate expunged from the
        record.

6.  ✓  due process rights were distributed and discussed.

7.  ____  other: _____


The above statements have been carefully explained to me and my signature below indicates my consent
to the recommended assessments.




_____               _____
Signature of Parent/Guardian or Student (if 18 +)                    Date

KN-14

Law Offices
DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile: (703)-739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Paul S. Dalton*
Ellen Douglass Dalton*
William E. Houston+
Talib Abdus Shahid+
Laura E. Duos~
*ALSO ADMITTED IN D.C. & W.VA
+ ADMITTED IN D.C. & PA
~ADMITTED IN MD

Washington DC. Office:
601 Pennsylvania Avenue, N.W
South Building, Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

# SETTLEMENT AGREEMENT

February 11, 2005

## VIA FACSIMILE ONLY 202-626-0046

Ms. Fatmata Barrie, Esq.
Carpenter's Building
1003 K Street, NW
Washington, DC 20001

RE:      Kendall Nesbitt          Date of Birth:      November 1, 1984

Dear Ms. Barrie:

In lieu of the February 18, 2005, Due Process Hearing and in settlement of all issues, the Friendship Edison Public Charter School, Collegiate Campus, (hereinafter F.E. ) agrees to the following.

1.   Within ten (10) school days F.E. will hold an IEP/Placement meeting to review the clinical evaluation. The IEP Team will determine the amount and type of compensatory education, if any, the student is entitled to as a result of F.E.'s failure to earlier evaluate the student. Should the student's counsel disagree with any recommendation as to compensatory education that issue is reserved to the student.

2.   Upon execution of this agreement, the parent and student, by and through counsel, will withdraw the current hearing request as to F.E.

4.   In settlement of all attorney fees with regard to this case, F.E. agrees to pay $2,500.00 to parent's/student's counsel within 30 days of the signing of this agreement.

Agreed: _____

Paul S. Dalton, Esq.
Attorney for F.E.P.C.S.

DATE: _____ 2 - 16 - 05 _____

Agreed: _____

Fatmata Barrie, Esq.
Attorney for Kendall Nesbitt

DATE: _____ 12/16/05 _____

133

Sep 24, 2004   01:40PM   Dalton, Dalton & Houston                                                 No.1257   P. 1

ᾗ N-15

Law Offices
## DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile:  (703)-739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Paul S. Dalton*
Ellen Douglass Dalton*
William E. Houston+
Talib Abdus Shahid+
Laura E. Duos~
*ALSO ADMITTED IN D.C. & W.VA
+ ADMITTED IN D.C. & PA
~ADMITTED IN MD

Washington DC. Office:
601 Pennsylvania Avenue, N.W.
South Building.  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

# SETTLEMENT AGREEMENT

September 27, 2004

<u>**VIA FACSIMILE ONLY**</u> 202-347-7108

Mr. Christopher Anwah, Esq.
Federal District Building, Suite 600
1010 Vermont, Avenue, N.W.
Washington, DC 20005

RE:        Kendall Nesbitt          Date of Birth:        November 1, 1984

Dear Mr. Anwah:

In lieu of the September 27, 2004, Due Process Hearing and in settlement of all issues, the Friendship Edison Public Charter School, Collegiate Campus, (hereinafter F.E. ) agrees to the following.

1.      F.E. will conduct a clinical evaluation and a vocational assessment within thirty (30) days.

2.      Within ten (10) school days of completion of said evaluations F.E. will hold an IEP/Placement meeting.  The IEP Team will determine the amount and type of compensatory education, if any, the student is entitled to as a result of F.E.'s failure to earlier evaluate the student.  Should the student's counsel disagree with any recommendation as to compensatory education that issue is reserved to the student.

3.      Upon execution of this agreement, the parent and student, by and through counsel, will withdraw the current hearing request as to F.E.

4.      In settlement of all attorney fees with regard to this case, F.E. agrees to pay $2,500.00 to parent's/student's counsel within 30 days of the signing of this agreement.

134

Agreed: _____
      Paul S. Dalton, Esq.
      Attorney for F.E.P.C.S.

DATE: ___9/24/04___

Agreed: _____
      Christopher Anwah, Esq.
      Attorney for Kendall Nesbitt

DATE: ___9/24/04___

05/35/2023  16:53   2023477108              IWEANOGE & ANWAH P.A

05/05/03  14:43 FAX 2029658913        BRUSTEIN & MANASEVIT         KN-14

RECEIVED

### Settlement Agreement
### Kendall Nesbitt, DOB: 11/1/84

The District of Columbia Public Schools (DCPS), Friendship-Edison Public Charter School (Friendship-Edison), and Mr. Christopher Anwah, on behalf of the parent and the student, agree to resolve the pending request for due process, filed April 9, 2003, pursuant to the following terms and conditions:

1. Friendship-Edison will reconvene a BLMDT/IEP meeting, with DCPS invited participation, to review current data and determine if additional testing should be completed, within 5 business days of execution of this Agreement or at the earliest mutually agreeable time.

2. Should the BLMDT/IEP team described in paragraph 1 recommend that additional evaluations be completed, Friendship-Edison agrees to test the student and provide copies of evaluation reports within 30 calendar days of the BLMDT/IEP meeting.

3. Friendship-Edison also agrees to reconvene the BLMDT/IEP team, with DCPS-invited participation, within 10 business days of receipt of all evaluation reports, or at another time mutually agreed to by the parties, to review the evaluations and modify the student's IEP as needed and if appropriate, discuss related and transition services, and discuss compensatory education, as needed.

4. DCPS agrees to attend and participate in the BLMDT/IEP meetings described in paragraph(s) 1 and 3.

5. The parties agree that any future notices that Kendall is entitled to receive shall be sent by facsimile to Christopher Anwah at 202-347-7108. Notices to DCPS shall be sent to Arlene Jackson at 202-442-5517. Notices to Friendship-Edison shall be sent to Brian Kobil at 202-965-8913.

6. Friendship-Edison and DCPS agree to coordinate the provision of transition and vocational services.

7. The BLMDT/IEP team shall discuss the issue of compensatory education at the BLMDT/IEP meetings described in paragraph(s) 1 and 3. If the BLMDT/IEP team recommends that Kendall receive compensatory education, the BLMDT/IEP team shall determine the level, nature of services, and frequency of compensatory education to be provided to the student. If the BLMDT/IEP team recommends that Kendall receive compensatory education, Friendship-Edison and DCPS shall provide Kendall with the compensatory education services recommended by the BLMDT/IEP team.

8. The parent and student agree to cooperate in all the procedures described in this Agreement, and in the scheduling and participation in timely BLMDT/IEP meetings. Any delay caused by the parent or parent's attorney, or the student or student's attorney, shall extend the timeframes outlined above by an equivalent time period. Friendship-

136

05/05/2003  15:53    2023477108                    IWEANOGE & ANWAH P.A                PAGE  03
05/05/03  14:43 FAX 2029658913          BRUSTEIN & MANASEVIT                          ☒ 004/004

Edison shall not be held liable for any consequences of another party's failure to
participate in the BLMDT/IEP meetings described in paragraph(s) 1 and 3.

9.  The parent and student agree to withdraw the pending request for due process upon
execution of this Agreement.

10. The parent and student agree to forward a copy of the letter of withdrawal of the request
for due process to all parties within 2 business days of execution of this Agreement.

11. The student reserves the right to request a due process hearing if the parties fail to agree
on the amount and nature of compensatory education pursuant to paragraph 8.

Agreed to:

_____ 5/6/0
Ms. Jessica Charles                    Date
Attorney Advisor for DCPS

_____ 5/5/03
Mr. Brian Kobil                        Date
Counsel for Friendship-Edison PCS

_____ 5-5-03
Mr. Christopher Anwah                  Date
Counsel for the Student

_____ 5-5-03.
Mr. Christopher Anwah                  Date
Counsel for the Parent

137

KN-17



RSG

Rehabilitation Staffing Group

Office  1.877.552.3422
Fax:   1.877.875.2500
rphone: info@rehabgroup.com
www.rehabstaffinggroup.com

## PSYCHOLOGICAL EVALUATION

Name: Kendall J. Nesbitt                    Dates of Evaluation: 4/25; 5/2;5/9/02
DOB: 11/1/84                                Evaluated by: Q. Graham, Ph.D.

Reason for Referral
An evaluation was requested to determine Kendall's eligibility to receive special
education services.

Sources of Information
Interview with Kendall
Wechsler Adult Intelligence Scale – 3rd edition (WAIS-III)
Developmental Test of Visual Motor Integration
Test of Non Verbal Intelligence – 3rd edition (TONI-3)
Wechsler Individual Achievement Test – 2nd edition (WIAT-II)

Background Information
Kendall Nesbitt is a seventeen year old male who currently attends Edison Friendship
Collegiate Academy. He is a tenth grader. Kendall's grades demonstrate an uneven
academic performance. Kendall reports no significant difficulty in school other than a
dislike for attending school. He could not identify a part of the school curriculum that he
found interesting. He did not indicate a career choice after he finished school. Overall, he
expressed a low level of interest in school and academic material.

Kendall is a soft spoken young man who readily agreed to participate in the evaluation.
He denied the need for glasses but held his head very close to the page as he worked. He
reported no significant medical concerns and hearing seemed to be within acceptable
limits. Kendall became fatigued easily. In fact, the first session had to stop because he fell
asleep. He was more alert in subsequent sessions but could not sustain concentration for
longer than approximately one hour. Despite these difficulties, Kendall cooperated with
the evaluation and the results seem to be an accurate measure of his current functioning.

138

HEADQUARTERS
Maryland Trade Center II
7474 Greenway Center Drive Suite 620
Greenbelt, MD 20770

BALTIMORE OFFICE
400 E. Pratt Street Suite 800
Baltimore, MD 21202

Kendall Nesbitt
Psychological Evaluation
Page Two

## TEST RESULTS

Currently, Kendall is functioning in the borderline range of intelligence as measured by the WAIS-III.

| SCALE | IQ/INDEX | %ILE | RANGE |
|---|---|---|---|
| Full Scale | 73 | 4 | borderline |
| Verbal | 75 | 5 | borderline |
| Performance | 75 | 5 | borderline |
| Verbal Comprehension | 74 | 4 | borderline |
| Perceptual Organization | 74 | 4 | borderline |
| Working Memory | 67 | 1 | deficient |
| Processing Speed | 81 | 10 | low average |

There is no difference between verbal and performance skills. This suggests that language does not help or hinder his work. These results seem to be influenced by a deliberate response style and motivational weaknesses. These issues , in combination, cause Kendall to appear less competent than is probably true. He was reluctant to give an answer unless he was very sure. If there was any doubt in his mind, he would answer "not sure " or "never heard of it". He approached non verbal tasks with a vague strategy which relied upon trial and error. On these tasks he also did not try all possibilities. He worked slowly and did not earn time bonuses. Both verbal and non verbal skills were in the borderline range of functioning and exceeded the scores of approximately 5% of students his age.

| SCALE | SS | SCALE | SS |
|---|---|---|---|
| Vocabulary | 5 | Picture Completion | 6 |
| Similarities | 5 | Digit Symbol – Coding | 7 |
| Arithmetic | 4 | Block Design | 6 |
| Digit Span | 8 | Matrix Reasoning | 5 |
| Information | 6 | Picture Arrangement | 6 |
| Comprehension | 7 | (Symbol Search) | ( 6) |
| (Letter- Number Sequencing) | (2) | | |

Relative strengths were seen in short term memory for numbers, combining short term memory with motor speed and understanding the rules for social interaction. Weaknesses were demonstrated in combining short term memory with the manipulation of information. Kendall had difficulty holding information in his short term memory and rearranging this data. Another weakness was seen in arithmetic. There seems to be a

Mar 27 03 08:45a

Kendall Nesbitt
Psychological Evaluation
Page Three

weakness in basic math facts which was exacerbated by low levels of motivation in this area.

The Developmental Test of Visual Motor Integration suggested the presence of visual motor integration deficits. Kendall earned a standard score of 73 with a percentile rank of 4. Stated another way, 4 of 100 students of Kendall's age score lower than he on this test. This yielded an age equivalent of 10 years 3 months. The results suggested the presence of compensatory techniques which were successful with less complicated stimuli. As the information became more complex, Kendall's strategies yielded less accurate reproductions.

The Test of Non Verbal Intelligence had results consistent with the WAIS-III findings. The TONI is a scale which does not use language nor does it have time limits. It required the student to use visual perceptual skills to solve problems. On this scale, Kendall scored in the borderline range of abilities (Quotient = 73;4th percentile;age equivalent = seven years – zero months). Kendall was penalized by a response style which did not carefully examine the task. Testing of the limits after the formal stop point was reached demonstrated that he could correctly solve more complex tasks but it required encouragement and coaching.

Kendall completed the Wechsler Individual Achievement Test - 2nd edition which assessed his current level of functioning in specific academic areas.

| COMPOSITES | SS | %ILE |
|---|---|---|
| Reading | 51 | <.1 |
| Mathematics | 40 | <.1 |
| Written Language | 53 | .1 |
| Oral Language | 76 | 5 |
| Total Composite | 51 | <.1 |

| SUBTESTS | SS | %ILE | AGE EQUIV. | GRADE EQUIV. |
|---|---|---|---|---|
| Word Reading | 55 | .1 | 8:8 | 3:1 |
| Reading Comprehension | 65 | 1 | 9:0 | 3:6 |
| Pseudoword Decoding | 56 | .2 | 5:8 | 1:2 |
| Numerical Operations | 49 | <.1 | 8:0 | 3:0 |
| Math Reasoning | 40 | <.1 | 7:8 | 2:2 |
| Spelling | 70 | 2 | 9:4 | 3:8 |
| Written Expression | 51 | <.1 | 6:4 | 1:5 |
| Listening Comprehension | 72 | 3 | 10:4 | 4:8 |
| Oral Expression | 86 | 18 | 9:0 | 4:2 |

Kendall Nesbitt
Psychological Evaluation
Page Four

Kendall's academic performance demonstrated significant deficiencies which would make it difficult for him to meet the expectations for a high school student. Reading skills were penalized by a deficient sight vocabulary as well as limited decoding and word attack skills. He had great difficulty deciphering unfamiliar words. Kendall will require assistance in increasing his sight vocabulary as well as comprehending more complex material. Skills such as drawing inferences, recognizing cause and effect relationships, drawing conclusions and predicting outcomes were underdeveloped. Kendall had difficulty with the symbolic use of language. He will need assistance in increasing the understanding of more complex and symbolic material.

Math was a much weaker area of performance for Kendall. His work in this area was well below average. His performance exceeded the work of approximately 1% of students his age. He inconsistently solved addition, subtraction and multiplication problems using 2 and 3 digits. Kendall sometimes confused operations. It was unclear if this was a result of insufficient attention to the task or a visual difficulty. While he seemed to know basic number facts as well as basic operations, he had difficulty in performing the operations. He will require assistance in increasing his consistency in using math facts. A review of basic math skills is probably the best starting point for him. Fractions, decimals and word problems were quite difficult for him.

Language as measured by the WIAT-II was an area of strength for Kendall. His skills in this area were in the low average range of performance. He was able to create stories and explain the steps to complete a task. It should be noted that he had visual cues to assist him in completing these tasks. This could provide a strategy to assist in improving his academic skills.

Writing skills were in the below average range of ability. Kendall's work exceeded the performance of less than 1% of his peers. His ability to write a letter was underdeveloped. The letter was appropriate to the topic but sparse in detail. The use of language was simplistic. Additionally, the letter demonstrated poor sentence structure, poor grammar and punctuation. Kendall will require support in developing his writing skills and increasing his confidence in this area.

Emotionally, Kendall is struggling with the issue of competence. This is a typical adolescent issue but is exacerbated by a lowered level of self esteem and academic deficiencies. It seems that Kendall would like to be responsible for providing the structure and limits in his life. He believes that if left to his own devices, he would do fine. While he seems to do a reasonable job of managing his behaviors he is not equipped to competently manage the responsibility of his academic work. While he attempts to conceal it, Kendall has questions about his ability to meet the challenges of his environment. He has developed a set of maladaptive techniques which help him to avoid tasks which he considers too challenging. Unfortunately, he views many tasks as too

Mar 27 03 08:43a

Kendall Nesbitt
Psychological Evaluation
Page Five

challenging. He will require more structure in his life which will relieve him of the
responsibility of placing limits upon himself. He needs a great deal of guidance but is
unsure about how to accept it. Kendall must understand that accepting help and emotional
support is not a confirmation of one's lack of ability or worth. He will require intensive
academic remediation but seems to have the ability to develop the skills required for
independent living.

Overall, Kendall Nesbitt is a seventeen year old male who is struggling academically. His
cognitive skills are in the borderline range as measured by the WAIS and the TONI. Most
of his academic skills are deficient. It is likely that Kendall has a learning disability in the
area of visual motor integration. It is also likely that he has received minimal intervention
during his school career. His test profile is similar to older adolescents who lose the
motivation to struggle with academics and devote their energy to concealing their
academic weaknesses. He will require an intensive intervention in order to improve his
academic skills. This intervention should include organizational skills as well as reading,
math and written language instruction. Counseling should also be a part of his school
program. The focus could be on understanding how he learns and what he requires in
order to learn. Issues of self esteem and motivation will also have to be addressed
.Kendall can be successful as he transitions into independent living but he must have an
intensive academic intervention in order to do so.

Recommendations
1. Placement in special education as a learning disabled student.
2. Vision examination
3. Counseling to increase self confidence and self esteem

_5/9/02_
Date

Prepared by

_Quentin Graham, Ph.D._

Quentin Graham, Ph.D.
Licensed Psychologist
DC License # 1333

142

nar 27 03 08:47a

KN-18



RSG

Kendall on Staffing Group

## SPEECH-LANGUAGE EVALUATION

NAME: Kendall Nesbitt
AGE AT EVAL.: 17;0
DATE OF EVAL: November 27, 2001

BIRTHDATE: November 1, 1984
SCHOOL: Friendship Edison Collegiate Academy
DATE OF REPORT: December 4, 2001

### Background Information

Kendall Nesbitt is a 17-year-old tenth grade student currently attending Friendship-Edison Collegiate Academy in Washington, D.C. Both Kendall's mother and his teachers have expressed concerns about his speech and language skills. Teachers are concerned that Kendall is falling behind in some of his classes and is not consistently completing his classwork.

### Assessment

#### Behavioral Observations

Kendall was cooperative during testing, but his attention varied. Early in the testing process, Kendall appeared to be very sleepy. He even nodded off a few times and did not hear the test item presented. Kendall seemed at ease in the testing situation, but when a test item was difficult for Kendall, he seemed to give up easily without even trying to answer the test item first. It is felt that the results of this evaluation are representative of Kendall's speech and language skills at this time.

#### Oral-Motor Skills

An oral peripheral examination revealed structures and their movements to be adequate for speech.

#### Voice

The vocal parameters of pitch, quality, and intensity appeared to be appropriate for the age, size, and gender of the client.

HEADQUARTERS
Maryland Trade Center II
7474 Greenway Center Drive Suite 620
Greenbelt, MD 20770

BALTIMORE OFFICE
400 E. Pratt Street Suite 800
Baltimore, MD 21202

143

Page 2
K. Nesbitt
S/L Eval.

*Fluency Skills*

Analysis of spontaneous speaking samples revealed fluency to be within normal limits.

*Language*

Information was obtained through formal and informal assessment measures. The following tests were administered:

The Expressive One Word Picture Vocabulary Test – 2000 was administered to assess single word expressive vocabulary by asking Kendall to name pictures as they were presented. Kendall achieved a standard score of 81 (average range – 90-110). This score suggests that Kendall was functioning below age expectancy on this test of single-word expressive vocabulary knowledge.

The Receptive One Word Picture Vocabulary Test – 2000 was administered to assess single word receptive vocabulary. Kendall was asked to point to one of four pictures that most accurately represented the word spoken by the examiner. Kendall achieved a standard score of 82 (average range – 90-110). This score suggests that Kendall was functioning below age expectancy on receptive vocabulary knowledge.

The Clinical Evaluation of Language Fundamentals - 3 was administered to assess Kendall's receptive and expressive language skills, specifically word meanings (semantics), word and sentence structure (morphology and syntax), and recall and retrieval (memory). Those scores were as follows:

| Subtest | Standard Score (average = $10 \pm 3$) Subtests only | Percentile Rank (average = 50) |
|---|---|---|
| Concepts and Directions | 4 | 2 |
| Word Classes | 4 | 2 |
| Semantic Relationships | 3 | 1 |
| Total Receptive Language Score (average range = 85-115) | 50 | 1 |

144

Page 3
K. Nesbitt
S/L Eval.

| Subtest | Standard Score (average = 10 ± 3) Subtests only | Percentile Rank (average = 50) |
|---|---|---|
| Sentence Assembly | 4 | 2 |
| Formulated Sentences | 8 | 25 |
| Recalling Sentences | 7 | 16 |
| Total Expressive Language Score (average range = 85 - 115) | 78 | 7 |
| Total Language Standard Score (average range = 85 - 115) | 62 | 1 |

Kendall's total standard language score of 62 placed him well below the average range for his age. His receptive language standard score of 50 was significantly below the average range for his age, indicating moderate deficits in receptive language skills. Kendall's expressive language standard score of 78 placed him below the average range for his age, indicating mild deficits in expressive language skills.

Kendall scored below the average range for his age on the Concepts and Directions subtest which required him to follow directions containing the concepts of inclusion/exclusion (i.e., not, except), coordination (i.e., and), temporal (i.e., after, before), conditional (i.e., if) and location (i.e., next to, closest) in one-two and three-level commands. Deficits in this area may impact Kendall's ability to understand and follow directions and instructions and complete workbook assignments in the classroom. On this subtest, Kendall had difficulties with directions involving inclusion/exclusion concepts (all....but none, neither/nor) and location concepts (next to, between, closest).

Kendall scored well below the average range on the Word Classes subtest, which required him to listen to a variety of words and choose the two words out of three or four which were related by the following categories: part-whole, semantic class features, synonyms, or antonyms. This deficit may impact Kendall's ability to form word associations and make inferences in the classroom. Kendall had difficulty with word classes involving synonyms, antonyms, and part/whole relationships.

P.20

Page 4
K. Nesbitt
S/L Eval.

On the Semantic Relationships subtest, Kendall scored well below the average range. He was asked to process comparative (i.e., older than), sequential (i.e., first, next), spatial (i.e., front of), and temporal relationships (i.e., before, after) and passive voice. On this subtest, Kendall had difficulty with sequential, comparative, spatial, temporal, and passive relationships. As a result of this deficit, Kendall may have difficulty understanding relations among words and meanings, interpreting passive voice in listening and reading, and using comparative, sequential, spatial, and time relations.

On the Formulated Sentences subtest, Kendall scored within the average range for his age. This subtest required him to construct original simple, compound, and complex sentences related to a visual cue, incorporating key words or phrases.

The Recalling Sentences subtest measured Kendall's ability to remember and repeat sentences after the examiner, which increased in syntactic and semantic complexity. Test results fell in the average range for his age. Sentence types included interrogative (e.g., questions), declarative (e.g., statements), relative clause, negative, and noun modification.

The Sentence Assembly subtest required Kendall to make two intact sentences from visually and auditorially presented word or word clusters. Kendall had difficulty with this subtest. His score fell below the average range for his age. On several test items, Kendall asked to "pass" instead of attempting to assemble the sentence from the words presented. Kendall had difficulty constructing 2 sentences out of words such as, "she opened, she ate, the jar, the pickle, before." In the classroom, this deficit may present as Kendall having lack of flexibility in using syntax for speaking, writing, and conversation.

*Pragmatic Skills*

Pragmatic communication refers to the ability to use language and non-verbal skills for a variety of effective purposes. Kendall was very reserved and did not initiate many conversations with the examiner. At times he was able to form answers with relative ease, but at times he also appeared to be somewhat uncomfortable. Kendall used skills such as turn-taking and eye contact effectively.

## SUMMARY

Kendall Nesbitt, a 17-year-old male, was evaluated due to concerns both his mother and his teachers had about his speech and language skills. Current testing revealed mild deficits in receptive and expressive vocabulary, moderate deficits in receptive language, and mild deficits in

Page 5
K. Nesbitt
S/L. Eval.

expressive language. Strengths were noted in Kendall's ability to formulate sentences about a certain topic and recall sentences verbatim. Kendall exhibited difficulties with following directions using different concepts, comprehending word classes and word relationships, and assembling sentences out of words and word clusters. Pragmatic language skills were age appropriate. Articulation skills were noted as within the average range for his age. Oral-motor skills were also found to be adequate for speech. Voice and fluency skills were found to be within the average range for his age.

## RECOMMENDATIONS

1. Speech-language therapy is recommended for three thirty-minutes sessions per week to address Kendall's difficulties with receptive/expressive vocabulary, following directions, comprehending word relationships, and sentence assembly.

   Specific goals should include:

   Following directions involving inclusion/exclusion and location concepts
   Processing relationships between words
   Assembling sentences using words and/or word clusters
   Understanding and using age-appropriate vocabulary words

2. Recommendations/Strategies for the Classroom:
   - Adapting the length and complexity of directions
   - Enhancing directions with visuals
   - Preteaching activities to establish key associations for listening and reading
   - Teaching mini-lessons to develop strategies for identifying and interpreting word associations in text
   - Teaching mini lessons to develop understanding and use of comparisons, sequences, space, time, and meaning relations in speaking and writing
   - Teaching mini-lessons to develop a variety of structures for expressing intents and stylistic variation in speaking and writing

Beth Wilkinson, M.S. CF-SLP
Speech-Language Pathologist

Twhanna Green, Ph.D., CCC-SLP
CF Supervisor

KN-19

# FILE

# Law Office,
# Christopher N. Anwah, LLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)
October 29, 2004

1003 K Street, N.W.
 Suite 500
Washington, D.C.  20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: Lawoffcna@aol.com

**By Fax: (101) 396-6152**

Mr Wallace R. Henry III
Special Education Coordinator
Friendship/Edison Public Charter School (Woodson Campus)
4095 Minnesota Avenue, N.E.
Washington, D.C. 20019

          RE:   Kendall Nesbitt
          DOB:  11/01/84

Dear Mr. Henry:

Our office is in receipt of the Vocational Assessment , per the Settlement Agreement signed and dated on September 27, 2004. However, we have not received a Letter of Invitation to attend the MDT/IEP meeting to discuss and/or revise Kendall's IEP and to incorporate the assessment into Kendall's IEP. Therefore, please submit three (3) dates in your Letter of Invitation for our office and the parent's consideration to schedule the MDT/IEP meeting. If you have any questions, you can contact the undersigned staff personnel at either (202) 270-9156 or (202) 626-0040.

Thank you for your immediate attention and cooperation regarding this matter.

Sincerely,

Annie R. Pressley, J.D.
Law Clerk for Christopher Anwah, Esq.
Attorney for Kendall Nesbitt

cc:    Client's file

148

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)

1003 K Street, N.W.
Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048
Email: Lawoffcna@aol.com

## FACSIMILE COVER LETTER

DATE:
    October 29, 2004

TO:
    Mr. Wallace R. Henry III

COMPANY
    Friendship/Edison Public Charter School (Carter G. Woodson Campus)

FAX NUMBER:
    (202) 396-~~6152~~ 8229

FROM:
    Christopher Anwah, Esq./Annie R. Pressley, J.D. - Law Clerk/Education Advocate

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET _2_

MESSAGE: REQUEST FOR THREE DATES FOR CONSIDERATION TO SCHEDULE MDT/IEP MEETING FOR KENDALL NESBITT - DOB: 11/1/84

If there is any problem with this transmission, please call as soon as possible at (202) 347-7026

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the IWEANOGE & ANWAH law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 347-7026 so that we can arrange for the retrieval of the original documents at no cost to you.

**XMT REPORT**

Oct. 29 2004 12:10PM

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|---|---|---|---|---|---|---|
| 01 | 7968113 | Oct. 29 12:09PM | 01'20 | TX | 02 | OK |

Ltr to Mr Adams at
Friendship / Edison re
MOU / IEP per settlement
Agreement signed
9/27/04
arp.