GOVERNMENT OF THE DISTRICT OF COLUMBIA

DEPARTMENT OF PUBLIC SCHOOLS

OFFICE OF STUDENT HEARINGS

-------------------------x

IN THE MATTER OF:            :

                             :

KENDALL NESBITT              :

-------------------------x


Washington, D.C.

Tuesday, February 14, 2006

The above-entitled matter came on

for hearing, pursuant to notice.


BEFORE:

        TONYA    BUTLER-TRUESDALE,    Hearing

Officer

APPEARANCES:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                                    (202) 234-4433

<u>On Behalf of the Student/Parent:</u>

    P. DALTON, ESQ.


<u>On Behalf of the D.C. Public Schools:</u>

    RASHEEDA WILSON, ESQ.


    This transcript was produced from an audio CD provided by D.C. Public Schools.


P-R-O-C-E-E-D-I-N-G-S

HEARING OFFICER BUTLER-TRUESDALE:

Good Afternoon.  You might want to close

that door, because I'm assuming Kendall is
not joining us.

PARTICIPANT: No, he is. He's
supposed to have already left school.
Because he went and -- he didn't want to go
to school. But he's supposed to leave at
2:30.

HEARING OFFICER BUTLER-TRUESDALE:
Where is he coming from, again?

PARTICIPANT: I really don't
know, but the Metro is right there.

HEARING OFFICER BUTLER-TRUESDALE:
We'll go off the record and wait until 3:15.

(Whereupon, the above-entitled
matter went off the record.)

HEARING OFFICER BUTLER-TRUESDALE:
Today is Tuesday, February 14th, 2006, and
this is an administrative hearing for
Kendall Nesbitt, who's birthday is listed as
November the 1st, 1984.

This hearing is being reconvened
from a hearing which was originally
scheduled on May the 13th, 2005, at 2:35 in
this room. And then a subsequent hearing at

-- on June the 30th, 2005, at 3:00, also in this room.

And I'm trying to figure out of -- I think there was another one, I thought. Or maybe I'm thinking of the continuances that we had since the status reports were due.

This hearing is being convened in response to a hearing officer's determination, which I offered for this petition with respect to his placement at High Rose School, and the appropriate placement, mainly to discern whether or not petitioner was actually attending school, and progressing there. I'm sorry, go ahead.

PARTICIPANT: This was also -- this was in result to the complaint.

HEARING OFFICER BUTLER-TRUESDALE: Okay, let me make sure they put the -- so the -- was there a motion for consolidation?

PARTICIPANT: No.

HEARING OFFICER BUTLER-TRUESDALE: Okay. So they just snuck this part in there. My recollection was that this was

scheduled with respect to the status reports
that I ordered.

        PARTICIPANT:  Oh.

        HEARING OFFICER BUTLER-TRUESDALE:
And that the hearing had been continued.  I
think twice, right?

        PARTICIPANT:  It was from the
same complaint.

        HEARING OFFICER BUTLER-TRUESDALE:
From the complaint or the status report?

        PARTICIPANT:  The complaint.

        HEARING OFFICER BUTLER-TRUESDALE:
Because he was unavailable.  Mr. Dalton was
unavailable once, and then the petitioner
was unavailable once.

        PARTICIPANT:  Right, well it was
on the complaint.

        HEARING OFFICER BUTLER-TRUESDALE:
On the complaint and not the status report?

        PARTICIPANT:  Right.

        HEARING OFFICER BUTLER-TRUESDALE:
Okay, okay.

        MR. DALTON:  Well, with the
status -- would still be an issue.

HEARING OFFICER BUTLER-TRUESDALE:
Okay, so you have presented me with -- first
of all, let me have everyone in the room
proceed to introduce themselves, since
you're  in the hearing room, starting with
Ms. Chapman.

MS. CHAPMAN:  Good afternoon,
Rasheeda Chapman, Attorney Advisor, DCPS.

MS. ROSS:  Carlyn Ross
(phonetic), Special Education Coordinator,
Friendship Edison Collegiate Academy.

MR. DALTON: Paul Dalton,
Counselor for Friendship Edison Public
Charter Schools.

MS. BERRY: (Inaudible) Berry
(phonetic), Attorney for the student.

MS. JONES: Tomeka Jones
(inaudible), attorney for the student.

HEARING OFFICER BUTLER-TRUESDALE:
And let me further state that since you
explained to me that there is also new
hearing requests for the petitioner, this is
an administrative hearing.  This is being
conducted in accordance with the guidelines

and rights established by Public Law 108-
446, the Individuals with Disabilities
Education Improvement Act.  We are
authorized as the IDEA of 2004, the rules of
the Board of Education of the District of
Columbia, and Section 145 of the D.C.
Appropriations Act.

I've introduced myself already.
I wanted to state that I have no
relationship or close acquaintance with any
of the parties involved in this hearing.  I
will hear the evidence presented during this
hearing and make a ruling in accordance with
the applicable laws and regulations.

The hearing is closed to the
public unless the parent -- oh, I'm sorry,
the  adult student himself explicitly states
that the hearing should be open to the
public.  The matters discussed here today
are confidential and must remain
confidential even after the hearing is
completed.

The hearing is being tape
recorded, and either party may request a

copy of the tape or written transcript, by writing to the student hearing office, at 825 North Capitol Street Northeast, 8th Floor, Washington D.C., 20002.

And someone is here to -- they've been advised of the due process, right , due to the previous hearings?  Are you waiving a formal reading?

PARTICIPANT:  Yes.

HEARING OFFICER BUTLER-TRUESDALE: Okay.  And I have disclosures KN01 through KN20, a disclosure letter from DCPS. Anything from --

MR. DALTON:  Yes, there should be.

PARTICIPANT:  DCPS 12?

HEARING OFFICER BUTLER-TRUESDALE: I don't have them.

MR. DALTON:  Do you have them?

HEARING OFFICER BUTLER-TRUESDALE: No.

MR. DALTON:  I have an extra copy.

HEARING OFFICER BUTLER-TRUESDALE:

Thank you.  Okay, one and two.  Okay, the preliminary issues?

MR. DALTON:  Preliminary issues are that the student has aged out.  He's no longer entitled to the benefits under IDEA, because his 22nd birthday has passed. Therefore, we request that all actions be ceased.

HEARING OFFICER BUTLER-TRUESDALE: Ms. Berry?

MS. BERRY:  Due to the fact that the hearing officer's determination was issued on August 12th of '05, and Friendship Edison was required by the (inaudible) to meet within ten days, and determine the services the student needs, Friendship Edison is still responsible because Friendship Edison violated the order, and did not comply with the hearing officer's determination.  And it's inconsiderable to now  come in and say, "Well, even though we have denied the student for how many years, then let's just leave him be."

And the fact of the matter is

he's extremely below level. Friendship Edison has been determined to have violated his rights for the years that he was attending Friendship Edison Public Charter School. And yet, they neglected to service him.

And furthermore, the hearing request as written is, in this case, Friendship Edison had 15 days in which to ask that a hearing request be dismissed on this case, both on what's in the complaint, and make sure that it's indicated that it is insufficient.

They had the opportunity to make sure all that is taken care of before we even come to the table. They did not do so. We held a meeting in December. There was a meeting held with Friendship Edison, and they did not make any objections to the complaint or to the student's age.

They, however, did agree that he needed a compensatory education, and the only issue pending was that they would not agree to the hours that was being requested,

as far as compliance for education is

concerned.  And they were in agreement that

he in fact needed a vocational program

because he's so far below level.

And because according to IDEA,

the whole purpose of IDEA is to make sure

that a student is prepared to be able to be

out in community and succeed in the

community.  And  at the stage that he's in,

functioning at a third-fourth grade level,

that is not going to happen.

What he needs, and as they

themselves indicated, they will -- they are

in agreement that he does not a vocational

program, and this was reset.  No objections

were made to the student receiving

compensatory education.

No objections were made to the

complaint to say, "Well, he's no longer

under IDEA, and therefore, this complaint

should no longer go forward."  They have

waived their right to make an objection --

HEARING OFFICER BUTLER-TRUESDALE:

Now, that waiver is pursuant to what area of

the statute?

MS. BERRY:  They indicated that the LEA(phonetic) has 15 days, in which to make a motion to dismiss the complaint based on the fact that it is insufficient.  And to now come in and say, "Well, we can no longer go forward because he is past the review age."

HEARING OFFICER BUTLER-TRUESDALE: I'm not sure that it's insufficient.  But my question is I'm not sure that the insufficiency, an alleged insufficiency of the complaint, is the same as the petitioner no longer having standing.  I'm not really sure.  So I'm saying if you're lumping all of that together, where does it do that in the statute?

MR. DALTON:  Jurisdiction is an issue that will not be waived, always be raised.  There's plenty of case law on that point.  Ms. Berry has cited no case law that says that there is an extension beyond the end of the 22 birthday, none.

There is nothing in IDEA that

I've ever seen that says that there's an extension beyond the age (inaudible). In addition to that, we did not receive the HOD until after the child had aged out. We received it on November the 18th. The child was not on (inaudible).

MS. BERRY: And he has not yet graduated from school. He still --

MR. DALTON: Those are two different things.

MS. BERRY: Right. He still -- he's still in school.

MR. DALTON: Those are two independent grounds; graduation is one ground. The other ground is --

MS. BERRY: Whichever is latest, correct? Whichever is latest, correct?

MR. DALTON: No, no.

MS. BERRY: And right now, he's still in school.

MR. DALTON: It's not.

MS. BERRY: He's still in school. He's receiving services. He still has an IEP. He's not been exited from special

education.

HEARING OFFICER BUTLER-TRUESDALE:
Okay, okay.  My first question hasn't been
answered.  And now my second question is, is
it graduation or 22, or whichever is latest?
If so, show me where it says that.  I still
didn't get the answer to my first question.

MS. BERRY:  Unfortunately, I
obviously did not know about this coming up.
This is why they made the law; to bring up
issues.

Kendall, we've already gone on
the record and read the introductory
statement that I make.  And we're on
preliminary motions, and there's been a
motion to dismiss your new complaint because
you've aged-out; because of your age and the
fact that you're now 22.  And that's what
you're -- excuse me, 21?

PARTICIPANT:  Twenty one.

HEARING OFFICER BUTLER-TRUESDALE:
Excuse me, when is your birthday?

MR. DALTON:  When is your
birthday?

MS. BERRY:  November '06.  We're
not in November '06.

MR. DALTON:  In '05, it would've
been 22.

MS. BERRY:  Twenty-one, 21.
He'll be 22 in November '06.

HEARING OFFICER BUTLER-TRUESDALE:
You're 21?

MS. BERRY:  Right, November '06
will be 22.  So he's still 21.

HEARING OFFICER BUTLER-TRUESDALE:
So can we delete from the tape the part that
shows none of us know how to count?

MR. DALTON:  Well, I'll withdraw
the age argument.

HEARING OFFICER BUTLER-TRUESDALE:
Okay.

MR. DALTON:  What I would like to
move towards is the fact that the -- in both
our answer, which is Edison 01, and the
resolution meeting, which is Edison 02, we
reflect the fact that we did not receive
from the student hearing office a copy of
the HOD that counsel has been referring to,

which was an order determination of August the 12th, until November.

In early November, we got a copy of it. I discussed the matter with Ms. Berry. Ms. Berry indicated that she would not be coming to the meeting; that the meeting had to be scheduled with an advocate.

We were not able to schedule a meeting until December. At the resolution meeting, the resolution was that comp ed had to be an hour for hour. We explained to her that that violated the court of appeals decision in *Reed vs. the District of Columbia*, and the advocate's position was basically that they weren't going to move from their position, regardless of the court of appeals' decision.

Therefore, we were at a position where we could not follow order, and it left us in an untenable position because we couldn't violate the court of appeals' decision.

HEARING OFFICER BUTLER-TRUESDALE:

Yes.

MR. DALTON:  So I guess what we would be asking for is that if there is going to be another meeting, that your previous order be adhered to, and that we receive copies of the monthly, stress the word monthly, progress reports.  And we would ask for a certification by High Roads(phonetic) that these documents are not being made up; that they're not being reconstructed.

HEARING OFFICER BUTLER-TRUESDALE: Yes.

MR. DALTON:  Because we have not gotten that copy, we should have received a copy of what been produced all along.  And therefore, we are very suspect as to whether these documents are -- were produced in a timely fashion.

So based -- and if they cannot produce that, and since the student is in a full time placement, there is no way to determine that if they had followed your order, that he wouldn't have made progress

he needed to make in order for there not to
be a compensatory ed issue at this point.

HEARING OFFICER BUTLER-TRUESDALE:
Yes.

MR. DALTON:  And therefore, we
would request that since your order wasn't
adhered to, that we be dismissed.  Because
it's not fair to my client that another
school under the control of a different LEA
did not follow your determination.

HEARING OFFICER BUTLER-TRUESDALE:
Yes.

MR. DALTON:  In addition to that,
the other argument that was being made by
the advocate was that they weren't
interested in any compensatory ed, whether
it was hour for hour or not, unless it would
occur after graduation.

Well, after graduation is,
regardless of the date, is the ending of
special ed services.  So in addition, there
was no explanation of why the vocational
program at High Roads could not be utilized.

So again, there were two reasons

why we couldn't follow those orders.  One
was that we were being asked to violate
Reed, and the other was it was in our
opinion a lack of compliance with the
previous order, and no explanation or
justification to why the vocational program
at High Roads couldn't be utilized.

We were being asked to pay for a
program that on its face would not be
necessary, given High Road is considered by
the student's representative to be
appropriate placement.  That's what they've
asked for.

HEARING OFFICER BUTLER-TRUESDALE:
Ms. Chapman?

MS. CHAPMAN:  I just wanted to
also let the hearing officer know that the
school system has its own motion.  I didn't
want that to get lost in this.  It's going
back and forth in the --

HEARING OFFICER BUTLER-TRUESDALE:
Let me do that now.

MS. CHAPMAN:  Okay. DCPS would
request that the hearing officer dismiss

DCPS out.  The complaint notice that was
filed by the student lists that the
complaint is being made against Friendship
Edison.  There are no issues in the complain
that pertain to DCPS since the complaint is
based on an HOD violation, and DCPS was not
a party to that particular portion of the
order.

        And the relief that is being
requested is the compensatory education
based upon denials of (inaudible) by
Friendship Edison.  So it's our position
that we are not a party to this.  Our
position, and also obviously the student's
position, because the complainant is made
against Friendship Edison and not DCPS; that
we're not a party to this case.

        HEARING OFFICER BUTLER-TRUESDALE:
Ms. Berry?

        MS. BERRY:  No objections.

        HEARING OFFICER BUTLER-TRUESDALE:
Okay.  Now, my only concern with respect to
allowing you to leave at this moment is that
I still have not addressed the matters that

are here today with respect to the status of

the previous hearing.  So maybe I should go

there first and then --

MS. CHAPMAN:  Okay.  And if I

could just respond to that?  In the

complainant notice, there is nothing in

here.  There is nothing alleged that DCPS

has violated anything as it relates to a

status.  It's merely all of the issues are

about a meeting at -- for compensatory

education.

And then your order; DCPS was not

a required party for that meeting to discuss

compensatory education.  So it's our

position that we certainly were not on

notice that the issues to be adjudicated

today were in reference to a status request.

MR. DALTON:  I concur with Ms.

Chandler in regards to the notices.  I

disagree with her with regard to the status.

Because the status is something that you

continually indicated through all your

continuances that it's something you were

still going to raise; that in their

responsibility to monitor High Roads School,

they were required to see that your order

was complied with.  And their failure to

monitor the school and see that your order

was complied with keeps them potentially

culpable for any damage award that you might

accept.

        HEARING OFFICER BUTLER-TRUESDALE:

Yes.

        MR. DALTON:  Therefore -- but in

fairness, and since I do agree with Ms.

Chapman on another issue, the hearing will

have to continue to address -- for her, to

address the issue of compliance with the

order with the school.

        Now, if the school is not able to

certify to you that the monthly reports were

done, then we still might not have to come

back because the hearing officer may be able

to determine that since it was not complied

with, that the issue of -- if there is a

need for the compensatory ed, it would have

to be resolved at High Roads, not Friendship

Edison.

HEARING OFFICER BUTLER-TRUESDALE:

Yes.

MS. CHAPMAN:  Well, if I could just respond to that briefly?  I appreciate counsel's point in terms of the notice.  In terms of the status, I would just say that our, DCPS's, position, is that the student, through counsel, would've needed to put in there complaint, just reiterate, that in terms of the notice provision, that that wasn't something that was plead.

And for that reason, we do feel that we're not a party to the issues in this particular complaint notice.

HEARING OFFICER BUTLER-TRUESDALE:

Yes, yes.  My recollection of the one status that I did receive was that it was for several months, and it came after I asked petitioner's counsel in between hearings for the status report.  And that this status report did not comply with the terms of the order, in that there was one instance where there were four absences.  And my order stated that there were to be no more than

three absences, and that there was no
documentation given to me that it was --
that the one that was four was medically
excused.

What it came with, I believe, and
I'm sorry, I did not bring it here with me.
I believe it's at home; was something from
the mother.  And I'm not even certain that I
saw whatever was given to explain the
absences that came from the mother and not a
physician.  Right, this is what was given to
me, and I'm going to read this into the
record.

It's a report for August to
September; four absences.  October, two
absences.  November, one absence.  December,
four absences.  And I don't have the January
report yet.  So as far as I'm concerned,
we've already violated my HOD.

I stated very explicitly no more
than three days, and that those three days
had to be medically excused absences.  And I
was very serious about that.  So I haven't
even gone to the new hearing complaint.

MR. DALTON:  (Inaudible).

HEARING OFFICER BUTLER-TRUESDALE:
Eleven, yes.

MS. BERRY:  Now what -- if I may.
It indicated that --

MR. DALTON:  Eleven absences.

MS. BERRY:  Cannot see more than
three days of unexcused absences in any 30-
day period.

HEARING OFFICER BUTLER-TRUESDALE:
Yes.

MS. BERRY:  And according to High
Road, he did not have unexcused absences.
He had excused absences, in fact.  And High
Road is one to testify.

HEARING OFFICER BUTLER-TRUESDALE:
Medically excused absences?

MR. DALTON:  No, their definition
of excused is not your definition.

MS. BERRY:  Well, it doesn't say
medically excused.  It just says unexcused
absences.  And as a result, I have to
clarify with High Road whether it was
unexcused or excused.  And they indicated

that he did not have unexcused absences;

that they were, in fact, excused.

      HEARING OFFICER BUTLER-TRUESDALE:

Is that a copy of my order?

      MS. BERRY: Yes.

      MR. DALTON: Your order stated

that in order for it to be excused, it had

to be medically.

      MS. BERRY: It doesn't say that.

      MR. DALTON: That's my

understanding.

      MS. BERRY: It does not say that.

      HEARING OFFICER BUTLER-TRUESDALE:

Let me read it. The order that I issued on

August the 12th says, "Order that petitioner

is placed at High Roads Academy on an

interim basis. A monthly status report

shall be forwarded to this hearing officer

at the end of each month, detailing

petitioner's performance." I don't have any

performance data. "And attendance for the

preceding month by petitioner's counsel."

      "If petitioner exceeds more than

three days of unexcused absences of any 30-

day period, this interim placement shall be immediately suspended, and the funding party may immediately file a motion for reconsideration."

"DCPS shall issue a prior notice of placement." I'm sorry, "Prior notice placing and funding petitioner at High Roads Academy within five days of the issuance of this order, including transportation."

Okay, so you're right. It did not say medically excused. Boy, you're lucky on that one, because that was my intent.

MR. DALTON: That's what I remember from the hearing.

HEARING OFFICER BUTLER-TRUESDALE: Yes, I'm sure that I stated that on the record, but it is not in the order.

MR. DALTON: But the monthly part is in your order, and it certainly was violated.

HEARING OFFICER BUTLER-TRUESDALE: Right. That Friendship Edison shall -- oh, that's the meeting part, okay.

MS. BERRY:  And what I would like
is for this -- and understand we want the
status issued to be resolved.  However, I
believe that right now, Friendship Edison is
putting aside the fact that they violated
the HOD, which was clear that it must hold a
meeting within ten days.  They did not hold
a meeting within ten days.

I understand what Friendship
Edison is saying, however, it was not our
responsibility, not the student's, to
forward an HOD to Friendship Edison.  When I
don't get my HODs, what I do is I call the
student hearing office.  "There was this
hearing on so and so date.  It's been past
ten days.  I haven't received my HOD.  What
is going on?"  And they either tell me, or
they contact the hearing officer.

HEARING OFFICER BUTLER-TRUESDALE:
I hear you, and I want to address that
issue.

MS. BERRY:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:
But I'm not willing to put it before the

order that I wrote, stating that I wanted

the grades and the attendance records.  I

haven't seen any grades, and with respect to

the attendance records, we still are -- have

two months.  I guess August and September

represents more than 30 days, where he

exceeded the number of allowed absences.

MS. BERRY:  For two -- two

months.

HEARING OFFICER BUTLER-TRUESDALE:

Yes.  So if it -- I mean especially if they

didn't even get, Friendship Edison, didn't

even get a copy of the attendance reports,

or the --

MS. BERRY:  I realize I was

supposed to send it to Friendship Edison.

HEARING OFFICER BUTLER-TRUESDALE:

Well, how would they be able to make the

motion for reconsideration that I'm allowing

by the order?

MS. BERRY:  Because they're not

funding the placement.  Friendship Edison is

not funding the placement.  DCPS is.

HEARING OFFICER BUTLER-TRUESDALE:

But -- but I think it's -- I think it's reasonable for me to assume that -- that each counsel involved with it got the same information that the hearing officer is requesting.

MR. DALTON: But let's assume that we had (inaudible). We still don't have the monthly academic progress. So even if we assume for the purpose of argument that we got it, it still doesn't go to the issue of your order not being complied with; not being compiled with for an entire school year, actually.

And that goes directly to the heart of the issue of the comp ed. Because had that order been complied with, then we would be on notice or not on notice, as to whether or not the additional level of services was enough to cure the comp ed.

Because a full time placement in and of itself can be ordered as compensatory ed, for a student who otherwise doesn't really need a full time placement.

MS. BERRY: If this argument was

viable, I believe that counsel would have made that argument at the meeting we held at High Road. They did not make that argument at the meeting they held. Let me finish. I read -- Just like neither was -- Mr. Dalton was not present at that meeting, either. However, both of us had representatives at that meeting. And both had representatives bring back information, and both had the documentation to read.

As a result, if this argument was viable, and if Friendship Edison really believed this argument, then they would've made that argument at that meeting. They did not do so.

Friendship Edison did not comply with the HOD. Friendship Edison did not --

HEARING OFFICER BUTLER-TRUESDALE: Well, neither of you did. So let's get past that. Neither party complied with the HOD.

MR. DALTON: Well, we weren't --

HEARING OFFICER BUTLER-TRUESDALE: And they weren't able -- and that's what I'm getting to. And the student hearing office

didn't put them in a position to comply with the HOD.

MS. BERRY:  Well, I think that is --

MR. DALTON:  There's a record of requesting hearings from the student hearing office dating back two years, not one year --

MS. BERRY:  There's no record of a request for HOD.

MR. DALTON:  -- where they repeatedly violated that issue of not sending those hearings.

MS. BERRY:  There's no record here.

HEARING OFFICER BUTLER-TRUESDALE: HODs?

MR. DALTON:  Yes.  We even made a complaint to counsel in Blackman-Jones(phonetic) about it.  So it is not necessary, Ms. Berry, to put that in there.

MS. BERRY:  Of course it is if that's the allegation.

MS. CHAPMAN:  Can the hearing

officer rule on DCPS' motion before we get
too off in the other motions that are on the
table?

HEARING OFFICER BUTLER-TRUESDALE:
I'll be honest with you, Ms. Chapman.  Given
the number of issues that we have on the
table, I'm not willing to rule on that at
this point because I'm afraid that I may
make an erroneous decision.

MS. CHAPMAN:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:
There's too many things clouding the picture
at this point.

MS. CHAPMAN:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:
But as soon as I have a notion as to what
may be the most correct response to your
motion, I will -- I will take into
consideration your valuable time.

MS. CHAPMAN:  Okay.  Oh, no,
that's fine.

HEARING OFFICER BUTLER-TRUESDALE:
No, because I hear you.  You shouldn't have
to sit here until I figure out where I'm

going to do.  But unfortunately, I'm afraid

to ere.  So I'm going to stay cautious at

this moment.

        MS. CHAPMAN:  Okay.

        MS. BERRY:  That's what I was

saying.  If Friendship Edison had a problem

as far as the compensatory education is

concerned, and if Friendship Edison had a

problem getting the HOD and that's their

argument or defense, that it would --

        HEARING OFFICER BUTLER-TRUESDALE:

I don't know that they have to make that

argument to you.

        MS. BERRY:  No, I mean I --

        HEARING OFFICER BUTLER-TRUESDALE:

Especially pursuant to the hearing request

that I issued.

        MS. BERRY:  I said that's why.

        HEARING OFFICER BUTLER-TRUESDALE:

I don't -- I'm not certain that that was the

forum -- that that's the sole --

        MS. BERRY:  They indicated that

they made all these requests.  Then what --

what you would do -- what you would do is

put on the disclosure that the documentation
or the communication that was made stating
that they did not receive the hearing
officer's determination within the
appropriate time frame in which to comply
with the hearing officer's determination.
Because that is the defense: that we didn't
comply because we didn't get an HOD within
the appropriate time. Where, if you did get
the hearing officer's determination within
an appropriate time --

        HEARING OFFICER BUTLER-TRUESDALE:
And why didn't your office comply?

        MS. BERRY:  On that score, I
really believe that I guess I didn't read
the wording correctly at the time. Because
in my reading of the -- it stated, in my
reading of it, I guess I didn't read towards
the end of it.  All I -- which was my fault.
It wasn't the student's fault.  This one is
counsel's fault.

        HEARING OFFICER BUTLER-TRUESDALE:
See, I'm putting --

        MS. BERRY:  Not the student's.

Because the student is going to school and
he's doing everything right.  So it's not --

HEARING OFFICER BUTLER-TRUESDALE:
Well, I don't have any proof of that.

MS. BERRY:  And I have a witness
on the phone to testify to that.  She has
all the information on him.  She has his
progress reports.  She has -- she can
testify as to whether -- well, you have that
in front of you, as to whether -- what was
excusable, what was unexcused, and the
explanation that was given to me.

And as a result, the student is
not at fault because he did what he was
supposed to do.  And as a result --

HEARING OFFICER BUTLER-TRUESDALE:
I don't know that.

MS. BERRY:  Right.

HEARING OFFICER BUTLER-TRUESDALE:
I'm not going to say --

MS. BERRY:  And that's why I have
a witness on the phone.

HEARING OFFICER BUTLER-TRUESDALE:
And I hope you understand that.  I asked for

-- I asked for the information to come to me.

MS. BERRY: And that's why I have a witness to testify to that.

HEARING OFFICER BUTLER-TRUESDALE: But I asked --

MS. BERRY: And I understand where the hearing officer is coming from.

MR. DALTON: (Inaudible) anything after the fact.

MS. BERRY: Okay, counsel is not going to come in front of the hearing officer on record and fabricate information. And I would personally take offense to any such comments made by Friendship Edison's counsel. It's not the first comment since we've been sitting here today that counsel has made. That's not the first time. And I take personal offense to that fact.

I will not come in front of a hearing officer on record and fabricate information.

MR. DALTON: I'm not talking about counsel. I'm talking about the fact

that High Roads did not provide the report.
And now all of a sudden, they have them?
That's crap in my opinion.

MS. BERRY:  Okay.  They're annual
-- I'm sorry, monthly progress reports;
monthly, quarterly progress reports that are
written on the students.  Unfortunately, and
I will say it on the record, I did not, as
counsel, make the report to the hearing
officer as indicated.  But that does not
mean that High Road is going to fabricate
information, or that I would allow a
fabrication to occur and be put on the
record.

That is not going to happen, and
it has not happened.  The student is doing
everything he's supposed to do, and the
order is that if petitioner exceeds more
than three days of unexcused absences in any
30-day period; this (inaudible) shall be
immediately suspended, and funding party may
immediately file a motion for
reconsideration.

HEARING OFFICER BUTLER-TRUESDALE:

You know what?  I'm not going to waste your
time.  I asked for the records.  I want the
records.

MS. BERRY:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:
I don't want to hear the testimony on it.  I
want the records.  I want to look at it in
black and white.  Because I -- I have to
give all parties notice of what these
records say, I'm not going to allow you to
fax them in.  We'll get the records.

And with respect to compliance of
my order, we'll have to continue it again.
And I can't tell you that the disposition of
the matter being continued would be in
petitioner's favor or not in petitioner's
favor.  It depends on what the records say.

I'm looking at the grades, the
attendance reports, demonstrating your
efforts.  Okay?  And I have nothing other
than this, and I got this late.

I think that matters on your
hearing request are -- your new hearing
request --

MS. BERRY:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:
-- are related to the issues of the first
order that I put out.  I don't see that I
can handle the matter separately.  And I'm
not willing to hold Mr. Dalton's feet to the
fire on complying on the date that the MDT
meeting was supposed to be held if he didn't
get the order.

I don't see -- I don't see how
that's fair to the school.  He didn't get
the order; student hearing office can't
prove that they actually faxed the order to
him.  I'm assuming.

MR. DALTON:  No, they cannot.
That's the first thing we asked them.  We
didn't get it from the student hearing
office.

MS. BERRY:  Okay, I will check
with them because this -- I guess my -- my
issue is if you have defense then you must
have proof of that defense.

HEARING OFFICER BUTLER-TRUESDALE:
Well, you know --

MS. BERRY:  And that's my defense.

HEARING OFFICER BUTLER-TRUESDALE: Let me -- let me also --

MS. BERRY:  And he doesn't have it.

HEARING OFFICER BUTLER-TRUESDALE: Proof of the defense?

MS. BERRY:  Correct.  If he's having a defense, he comes in here and he says, "I did not comply with the order because --"

MR. DALTON:  I'm more than happy to have the hearing officer examine the record.

HEARING OFFICER BUTLER-TRUESDALE: Yes.  Let's, for the record, give them a call.  See if they can provide me with proof of when the -- was that August 12th?

PARTICIPANT:  '05.

HEARING OFFICER BUTLER-TRUESDALE: Okay.  Let me go off the record for a minute just to get them on the phone.

(Whereupon, the above-entitled

matter went off the record and resumed.)

HEARING OFFICER BUTLER-TRUESDALE:
Let me just go back on the record and make
it clear that from today's date, any
absences must be medically excused.  Okay?
The date that I wrote it?

MS. BERRY:  August 12th.

HEARING OFFICER BUTLER-TRUESDALE:
August 12th, yes.  Is that clear?  Okay.

(Whereupon, the above-entitled
matter went off the record and resumed.)

HEARING OFFICER BUTLER-TRUESDALE:
I'm sorry, I should've said exceeding three
days.  Right.  Let me make that clear.  All
absences exceeding three school days --

MR. DALTON:  Is that three school
days for the entire period?

HEARING OFFICER BUTLER-TRUESDALE:
For that 30-day period --

MR. DALTON:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:
-- must be medically excused.

MR. DALTON:  So on the fourth
absence, whether it's one day or two days,

it has to be medically supported?

HEARING OFFICER BUTLER-TRUESDALE:
Right.

(Whereupon, the above-entitled
matter went off the record and resumed.)

HEARING OFFICER BUTLER-TRUESDALE:
I want to go on and move to the -- gosh,
Rasheeda is gone. I want to go on and move
to the comp ed issue, because I want to get
some idea of what your office was attempting
to do at the resolution meeting with respect
to comp ed, and hour-for-hour. Did you
provide any documentation supporting the
need for hour-to-hour consistent with Reed?

MS. BERRY: Not consistent with
Reed. What we did was -- and there was a
miscalculation. And when it got to the
table, they did recalculate it, and they did
a recalculation based on the amount of hours
that he had in his IEP. Because according
to what was documented, you all agreed that
the vocational training design would be an
appropriate remedy for him.

We asked for a certain amount of

hours because we believe that would be --
that would go in with this program.  But
they indicated that they may agree on that
he needs the program, but they won't agree
on the hours.

HEARING OFFICER BUTLER-TRUESDALE:
Right.

MS. BERRY:  And there was no
question, at least not according to what I
have documented, that there were questions
as to what they need to be able to decide on
the hours or -- there was no --

HEARING OFFICER BUTLER-TRUESDALE:
It's my understanding that Reed puts that
responsibility on the petitioner.

MR. DALTON:  Yes.

MS. BERRY:  I guess I've always
read that differently, but that's okay.
What the -- and at the table, there was no
discussion as to where we need to have
something saying that this is how much he
needs.  Then I pointed to documentation that
they had.

All they said was that yes, they

felt like because of the level that he's on,
the best thing for him would be in that
program. Because right now, we're trying to
get him to the point to where he'll even be
able to do the program, be able to read and
get on the right level to where he can
understand these processes.

HEARING OFFICER BUTLER-TRUESDALE:
I'm not certain why it's been proffered to
me that the advocate held firm to an hour-
for-hour calculation without any supporting
documentation consistent with Reed to state
that an hour-for-hour computation was
warranted.

MS. BERRY: And there was no such
request at this meeting.

HEARING OFFICER BUTLER-TRUESDALE:
Yes.

MS. BERRY: So this --

MR. DALTON: Oh, no, no, no.

MS. BERRY: Yes, Friendship
Edison. Okay, the hearing officer has it,
has the document. So it's not a matter of
me saying something that's not there.

MR. DALTON: Who put it in the
notes, but didn't put it in our answer?

MS. BERRY:  Okay, read it in the
-- read it in the notes.  Let me see if it's
there.  It's not in my disclosure.  It's in
Friendship Edison's disclosure.

MR. DALTON:  Right.

MS. BERRY:  And there's nowhere
in there that I saw that.

HEARING OFFICER BUTLER-TRUESDALE:
Let me make sure that's what I'm looking
for.  Okay, don't leave until I make sure
that's right.  Okay, do you have one with
the -- your area --

MR. DALTON:  703?

HEARING OFFICER BUTLER-TRUESDALE:
703, yes.  See, I need one for the 703 area
code going to Dalton.  I think this is Ms.
Berry's fax number.  There should be two,
but they're not in the same firm.

PARTICIPANT:  Okay, so you want
one --

HEARING OFFICER BUTLER-TRUESDALE:
See if there's one for Dalton with a 703

area code.

PARTICIPANT:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:
Thank you.

MS. BERRY:  So -- if that had
been a request made --

MR. DALTON:  (Inaudible) that for
herself.

MS. BARNETT:  Right, but you can
look on it.

MR. DALTON: It's in our answer,
and that's all she needed to do was put it
in her answer.  This idea that the school is
held to the standards of a lawyer when they
don't have a lawyer present is just hogwash.
And I don't think the hearing officer should
hear another word of it because the purpose
of having counsel is to have counsel make
the arguments.

When you don't have counsel, you
can't be held to those standards.  And what
is required is that you put it in your
answer, and that's what we did.

MS. BERRY:  And just for the

record Friendship Edison did have counsel
there.  Jessica Smith, Esquire, was at that
meeting.

        MR. DALTON:  Well, I'll be happy
to -- if I have to bring an attorney in --

        MS. BERRY:  Edison is making the
argument --

        MR. DALTON:  I want (inaudible)
from this --

        MS. BERRY:  Attorney is making an
argument --

        MR. DALTON:  (Inaudible).

        MS. BERRY:  I'll let counsel
finish his statement.  Counsel is stating
that Friendship Edison did not have counsel
at this meeting.  And as a result, could not
make any such request because there were
laypeople, whatever the case may be.

        While in this case, that is
incorrect.  They did have counsel at the
meeting.  She's an attorney from -- and it
says "Attorney for Friendship Edison,
Jessica Smith, Esquire."  So obviously there
was counsel there.

MR. DALTON: I wasn't there. I didn't realize that Ms. Smith was there. But all I'm saying is if we can -- if we need to bring Ms. Smith in, and you determine that her testimony is credible and that this issue was raised, I will -- am going to request attorneys' fees from counsel for bringing her in.

MS. BERRY: So now we go -- we go back and say, "Ms. Smith had this discussion at" -- as far as I know, these notes are supposed to reflect what happened at the meeting. And the reflection in these notes is that did not take place. So to come now to something contradictory to what is in here, is --

MR. DALTON: It's not contradictory.

MS. BERRY: It is.

MR. DALTON: It's in your answer.

MS. BERRY: It's not in here.

MR. DALTON: There's no requirement under the law that it be in the notes.

MS. BERRY:  Okay, but then don't say that happened at the meeting.

MR. DALTON:  It did.

MS. BERRY:  If you're saying that it happened on your answer, on counsel's answer, then so be it.  But for counsel to make another statement that it happened at the meeting, but now there's information -- there's no information in here that it happened.

HEARING OFFICER BUTLER-TRUESDALE: Okay, well, it's probably -- what's probably most productive is for me to state that for the record, for both parties to know, rather than make a compensatory education determination myself, I'm more inclined to send you back to the table and let you know that I expect you to adhere to Reed, and that I don't find any reason to support or affirm an assumption that there should be an hour-for-hour award without any documentation from you showing me why, especially since my HOD wasn't complied with and I don't have any grades.  I don't have

any progress reports.  I don't have any

attendance reports.

So see, I mean of all of the

blunders around this, thank god one of them

wasn't mine, I -- primarily, to me, to solve

any of it, I need the attendance reports and

the progress reports from the school.

And I'm going to address your

comments even though they should've been

made through counsel and they haven't sworn

you in.

Let the record reflect I'm speaking to the

mom.

I cannot take them directly from

the mom.  I prefer to have them directly

from the school so that there is no

impression that these documents were

tampered with, okay, in terms of the

voracity and authenticity of the records,

they need to come directly from the school.

PARTICIPANT:  Okay, not from me

but from the school.  Not from me.

HEARING OFFICER BUTLER-TRUESDALE:

Exactly, that would solve that issue.  And

in addition to that, I want to make sure --
want to make sure that I explain to mom that
the reason that I'm not attempting to get
those by fax from the school today is
because Mr. Dalton and Ms. Chapman deserve
an opportunity to see those records before
we proceed with the hearing.

          I think that it was implicit in
my order that if I'm asking for those
documents for review, that Mr. Dalton should
have received those documents.  I mean I --

          MR. DALTON:  Well, and Ms.
Chapman because they're the (inaudible).

          HEARING OFFICER BUTLER-TRUESDALE:
Right, I'm sorry.  And Ms. Chapman; that
they should've received the -- I don't think
that I even needed to state that in the
order because I shouldn't see anything that
they don't see.  So now --

          MR. DALTON:  (Inaudible).

          HEARING OFFICER BUTLER-TRUESDALE:
Yes, I think I'm trying to conserve time,
here.  I got to get the date from Sharon.

                    (Whereupon, the above-entitled

matter went off the record and resumed.)

HEARING OFFICER BUTLER-TRUESDALE:
We're back on the record, and we know now
that we have a continuance date of March the
16th, at 9:00 and 11:00. And of course,
Kendall, you need to be here. So that's an
excused absence.

KENDALL NESBITT: I also have
speech on the 16th.

HEARING OFFICER BUTLER-TRUESDALE:
You have speech on the 16th.

PARTICIPANT: It's outside of the
school, speech training.

HEARING OFFICER BUTLER-TRUESDALE:
On the 22nd of March?

PARTICIPANT: No, February.

HEARING OFFICER BUTLER-TRUESDALE:
Oh, well that won't -- that doesn't affect
this date. We're talking about --

PARTICIPANT: No, he's talking
about his absences.

PARTICIPANT: He's talking about
his absences.

HEARING OFFICER BUTLER-TRUESDALE:

Oh, of course.  Anything; I mean

evaluations, related services, I'm not --

      MR. DALTON:  (Inaudible)

education outside of the -- as long as it's

described.

      HEARING OFFICER BUTLER-TRUESDALE:

Yes, that's clear.

      MR. DALTON: The school should

tell them what there doing there, just tell

them you need it in a note.

      HEARING OFFICER BUTLER-TRUESDALE:

So the other thing that I wanted to say now:

With respect to the --

      MR. DALTON:  When are the reports

due?

      HEARING OFFICER BUTLER-TRUESDALE:

I'm really interested every 30 days.  And I

was thinking every 30 days from the issuance

of the order.  Does it say that? I usually

put every 30 days from the issuance of the

order.

      MR. DALTON:  What about the back

ones; when are they due?

      HEARING OFFICER BUTLER-TRUESDALE:

Oh, for the ones that I have not received?

        MR. DALTON:  Right.

        HEARING OFFICER BUTLER-TRUESDALE:

How quickly can you get those to me, Ms.

Berry?

        MS. BERRY:  I'll call Ms. Redman

today, and see if she can get them to be my

the end of the week.

        HEARING OFFICER BUTLER-TRUESDALE:

Okay, and you'll be faxing to both opposing

counsels?

        MS. BERRY:  You said you wanted

them directly from the school.  Or do you

want it from me?

        HEARING OFFICER BUTLER-TRUESDALE:

Will they be faxing directly to both

opposing counsel, also?

        MS. BERRY:  That's fine.

        HEARING OFFICER BUTLER-TRUESDALE:

Okay.

        MS. BERRY:  I'll ask her to --

yes, I'll ask her to -- let me see.  Are we

on the record?

        MR. DALTON:  I get it directly

from the school.

      MS. BERRY:  Are we on the record?

      HEARING OFFICER BUTLER-TRUESDALE:
Okay, so can we ask her if she's able to do
these no later than the 21st?

      MR. DALTON:  What?  If they
already have those reports done, why do they
need (inaudible)?

      HEARING OFFICER BUTLER-TRUESDALE:
Okay, I don't have any problems with that.

      MS. BERRY:  I'm sorry?

      HEARING OFFICER BUTLER-TRUESDALE:
Today is the 14th.  No later than the 16th?

      MS. BERRY:  Okay.

      HEARING OFFICER BUTLER-TRUESDALE:
Only because it's past 3:00 today.

      MS. BERRY:  The 16th, which is
Thursday?

      HEARING OFFICER BUTLER-TRUESDALE:
Okay.

      MR. DALTON:  They've already got
them done.

      HEARING OFFICER BUTLER-TRUESDALE:
Okay.

MS. BERRY:  I would --

PARTICIPANT:  They will be 215.

MS. BARNETT:  I would request by
the end of the week.  Because that's
tomorrow, come on.  I mean they have -- I
mean they're not just sitting there.

MR. DALTON:  They've already got
them.  What is the deal?

MS. BERRY:  Counsel is being very
unreasonable.  We do not contact Friendship
Edison and say, "We want evaluations now
that you already did by tomorrow."

HEARING OFFICER BUTLER-TRUESDALE:
No, we're not talking about evaluation.
We're talking about lists and grades and --

MS. BERRY:  Right, but --

HEARING OFFICER BUTLER-TRUESDALE:
I'll tell you what.  We don't have to -- we
don't have to litigate this issue.  I'm
going to compromise.  Today is Tuesday.  You
got until close of business Thursday,
period, which is the 16th.

MS. BERRY:  Yes, ma'am.

MR. DALTON:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:

Okay, now --

MR. DALTON:   If counsel does not have those, then we can notify the hearing officer?

HEARING OFFICER BUTLER-TRUESDALE:

Yes.

MR. DALTON:   With a motion?

HEARING OFFICER BUTLER-TRUESDALE:

Yes.

MR. DALTON:   Thank you.

HEARING OFFICER BUTLER-TRUESDALE:

Now, the other this is the -- my son is telling me to stop saying um-hum.  Yes; that is affirmative.

The other thing is the more productive meeting on compensatory education.  Is it fruitful for both parties, given that I've already stated that I'm not looking for an hour-for-hour computation without some documentation that that is what's warranted -- consistent with Reed. Are you able to get back together before you come back here?  Or do you want me to make

the decision? I don't think you want me to
make the decision.

           MR. DALTON: Yes, because my
motion is going to be to follow Reed, which
provides a -- a decision in favor of my
client.

           MS. BERRY: Which is what, no
compensatory education?

           MR. DALTON: No, it's just that
if it's undocumented, you don't get the
hour-for-hour. That's what Reed says, and
that's what --

           MS. BERRY: That's fine. But the
issue is Friendship Edison did not make any
offer of any comp ed whatsoever.

           HEARING OFFICER BUTLER-TRUESDALE:
But that's not what --

           MR. DALTON: No, that's not the
issue.

           MS. BERRY: They didn't. They
held -- yes, they held the meeting.

           MR. DALTON: It's the central
question. Answer the question.

           MS. BERRY: They did not offer

any compensatory education to say, "Okay,
you're offering this, but this is what we're
offering." Nothing happened. It seems to
be as if Friendship Edison had an
obligation, and all they have done here
today is transfer it to the student and
student's counsel.

The issue was -- the issue was
Friendship Edison convened a meeting and
determined the compensatory education. They
did not do that.

HEARING OFFICER BUTLER-TRUESDALE:
This says "Friendship Edison will not agree
to fund thirty-three hours when
(inaudible)."

MS. BERRY: They did not say we
believe that this is what is owed to the
student. That is normally --

MR. DALTON: You have to offer
more  documentation.

MS. BERRY: That is normally what
happens when you hold a meeting. That is
normally what happens when you hold a
meeting.

HEARING OFFICER BUTLER-TRUESDALE:

What?

MS. BERRY:  Normally what happens when you hold a meeting: The student or the parent will indicate what they believe the student is owed.

HEARING OFFICER BUTLER-TRUESDALE:

Yes.

MS. BARNETT:  And the school system would indicate what they believe the student is owed, and that's how it works at meetings.  Friendship Edison did not do that.  They spent the entire time --

HEARING OFFICER BUTLER-TRUESDALE:

Okay, now is there anything in the statute that requires the school to perform to your expectations at the meeting with respect to compensatory education?

MS. BERRY:  No, the order said Friendship Edison --

HEARING OFFICER BUTLER-TRUESDALE:

You're not answering my question.

MS. BERRY:  No, it's not about the statute, though.

HEARING OFFICER BUTLER-TRUESDALE:
But you're not answering my question.

MR. DALTON:  (Inaudible).

HEARING OFFICER BUTLER-TRUESDALE:
Okay, Ms. Chapman needs to be alerted that
the matter has been continued to March the
16th, 9:00 and 11:00.

MS. BERRY:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:
And I'm waiting to get the actual reports
from the school with respect to attendance
and performance, number one.  And now we're
at whether or not it's productive for me to
also order another meeting in the interim to
discuss compensatory education.

PARTICIPANT:  Okay, well can I
ask a question?

HEARING OFFICER BUTLER-TRUESDALE:
Yes.

PARTICIPANT:  In terms of the
reports, is it my understanding that
petitioner's counsel is to provide those
reports?

HEARING OFFICER BUTLER-TRUESDALE:

No, they're going to -- I'm directing her to
have the school fax them directly to both
opposing counsels.

MS. BERRY:  And just to clarify:
The compensatory education, because what we
did the complaint on was that Friendship
Edison did not convene the meeting.  And the
meeting has yet to be convened.

What we have is the -- was a
resolution session meeting, in answer to the
complaint as required by law.  This order
has not yet been complied with.  Let me
finish.

So it won't be another meeting.
It will be the meeting that they would need
to have convened already before we even file
this complaint.  And since the resolution
session meeting, they could have called for
the --

HEARING OFFICER BUTLER-TRUESDALE:
See, I'm trying to be humble and get out of
the (inaudible) --

MS. BERRY:  Right, and that's
fine.

HEARING OFFICER BUTLER-TRUESDALE:

-- so we can get to the merits, which can

you have the -- are you able to have a

meeting that will --

MS. BERRY:  Of course.

HEARING OFFICER BUTLER-TRUESDALE:

-- be productive, with respect to

compensatory education?

MS. BERRY:  Of course.

HEARING OFFICER BUTLER-TRUESDALE:

Which means that again, petitioner is to

come to the table.  Petitioner is to come to

the table with documentation explaining why

they are making the suggestion with respect

to hours that they're making, consistent

with Reed.

MS. BERRY:  Okay.  But at the

same time, I believe that a hearing officer

should not put the responsibility just on

the -- on the student or on the student's

counsel, because Friendship Edison has

denied the student, and as a result,

Friendship Edison must be held responsible

to provide the compensatory education.

They may disagree with what we
are offering, but if they are going to
disagree with what we're offering, they must
then put on the table what they owe -- what
they feel they owe the student.

HEARING OFFICER BUTLER-TRUESDALE:
I'm not certain that that follows if
petitioner didn't come to the table with
some idea of why they were asking for the
hour-for-hour.

MS. BERRY:  But it does, because
the order -- it does because the order is
clear on -- I would like to put on the
record that at this whole hearing,
Friendship Edison has -- has tried to make
this hearing be about the student and about
student's counsel, when, in fact, the
hearing is about Friendship Edison not
adhering to the hearing officer's
determination.  That's just a fact.

HEARING OFFICER BUTLER-TRUESDALE:
That's not in here.

MS. BERRY:  And that's fine, but
not convened at the meeting.  And they have

to own up and take responsibility.  I feel
like this whole hearing has been about the
student's counsel and the student.  Nothing
has been put on Friendship Edison, and their
responsible also to do what was ordered.

        Yes, we may not have provided a
status report.  However, the biggest issue
here is that the student has been denied by
Friendship Edison, and it has been
documented clearly, not just by the hearing
officer determination, but by documents.

        And the finding is there.
Friendship Edison should be held
responsible, and they should be -- they
should be made to own up to that fact.  And
why we sit here today, unfortunately, is
that everything is on the student's counsel
and the student.  And Friendship Edison --

        HEARING OFFICER BUTLER-TRUESDALE:
I think I've stated several times that
neither party complied with my order.

        MS. BERRY:  Right, and I
understand that.  But what I'm indicating is
that the responsible as far as what may or

may not happen at a meeting is being placed
on the student and the student's counsel

       HEARING OFFICER BUTLER-TRUESDALE:
Okay, let the record reflect that Mr. Dalton
has now left.  And the only parties
remaining  in the room are DCPS, Rasheeda
Chapman -- I'm sorry, Tameka Jones, parent,
adult petitioner, and his counsel, Ms.
Berry.

       MS. BERRY:  And that is the
argument I'm making.  I feel -- I feel as if
it should have been a matter of, "Okay,
counsel, you did not give me the status
report."  Friendship Edison, you did not
provide the student with the compensatory
education I ordered.  They haven't done it,
or the --

       HEARING OFFICER BUTLER-TRUESDALE:
The problem with me getting to what -- to
making pronouncements of failure with Mr.
Dalton is that I have nothing from the soh
indicating that they ever faxed him my
order, period.

       MS. BERRY:  That's fine.

HEARING OFFICER BUTLER-TRUESDALE:
Now what your office does when they don't
receive an order, that's your office's
standards.  I can't impose that on any one
firm with respect to what follow-up the firm
practices in terms of getting the orders.
And without DCPS having a record of actually
faxing it to him, I have no way of saying he
got it at a particular time.  They don't
have any record to give to me --

MS. BERRY:  Right, right.

HEARING OFFICER BUTLER-TRUESDALE:
-- indicating that they ever faxed it to
him, okay?

MS. BERRY:  Right, right.

HEARING OFFICER BUTLER-TRUESDALE:
He's saying that he eventually got it by
such and -- you know, through whatever
channels.

MS. BERRY:  Three months ago.

HEARING OFFICER BUTLER-TRUESDALE:
But there's no responsibility that I can tie
to him with respect to the order.  It is
actually the student hearing office's

responsibility to fax the order to him.

I'm not certain the counsel has the duty of having to chase around and say, "We didn't get an order. We didn't get an order." I don't know that, okay?

PARTICIPANT: Of course.

HEARING OFFICER BUTLER-TRUESDALE: Now, with respect to maybe some rules of professional responsibility, maybe, I don't know. But I'm not hearing you make that argument, and I don't want to hear it. The fact is, I have no way to prove that he actually got the order that I issued.

So you're asking me to take a leap or a step with him that I really don't have any grounds for taking, because he's saying he didn't get the order.

MS. BERRY: Right, but as counsel himself stated at the hearing, the hearing officer made the decision on the record, and then put it on paper. So everyone knew --

HEARING OFFICER BUTLER-TRUESDALE: I don't know.

MS. BERRY: -- when we left --

HEARING OFFICER BUTLER-TRUESDALE:
Given the fact that it takes me some time to
write these orders, I wish that were
sufficient.

MS. BERRY: What was going to
happen --

HEARING OFFICER BUTLER-TRUESDALE:
I ask for you all's cooperation some times
when I think there's going to be some time
before you get your orders in.  But that's
official notice of what the actual order is.
Many times you all are nice enough to comply
and actually get the order to be in effect
before you get the paper.  But that's not
what the law actually requires.

So I'm simply that you're asking
me to do something to tie more liability to
him that I have done today, and I don't have
the grounds to do it because he didn't get
the order.

MS. BERRY:  Right, he got the
order in November.  And now we're in
February.  Still nothing has been done.
Come on.

HEARING OFFICER BUTLER-TRUESDALE:
But you had a resolution.  You filed a
hearing complaint and you had a resolution
meeting on the issue.

MS. BERRY:  And anywhere between
there, they could've held a meeting at any
time to address the issue.  They could've
held an MDT meeting at any time.  There's
nothing stopping them.

HEARING OFFICER BUTLER-TRUESDALE:
Well, listen.  Let me tell you what I think
is most productive for your client, which is
that we get through that and get to the
meeting, and have the discussion about the
compensatory education that is consistent
with Reed, and we get the documents that we
need to discuss grades, attendance and
status.

MS. BERRY:  Right.  I just didn't
want the hearing to end with this seeming as
if it's -- it's about the student and
student's attorney, when it is not just
about the student and the student's
attorney.  It's also about the LEA.

HEARING OFFICER BUTLER-TRUESDALE:

It's just not time productive.  It's not.

MS. BERRY:  Maybe.

HEARING OFFICER BUTLER-TRUESDALE:

It's not, but it was both of you.  And we

don't have a disposition for this person

today because it was both of you.  And I'm

disappointed about it, because I don't like

making a threat to do something or act one

way or the other and not being able to

follow through.

MS. BARNETT:  Right.

HEARING OFFICER BUTLER-TRUESDALE:

I don't think that it's fair to dangle

something in front of someone, or over top

of their head and then just keep postponing

a decision one way or the other.  I don't

like that.  I'm not equipped.  I'm not

empowered to make a decision today that

would be based on the record that I asked to

be supplied with.  I'm being very patient

and going through that, and reiterating it

for the record when I -- I think it's pretty

clear.

MS. BERRY:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:
The only thing that's not clear is the
motion that DCPS made, because I don't know.
Because I think it's extenuating
circumstances.  Thank you.

(Whereupon, the above-entitled
matter went off the record.)