**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FRIENDSHIP EDISON PUBLIC
CHARTER SCHOOL
COLLEGIATE CAMPUS,

      **Plaintiff,**

          **v.**

KENDALL NESBITT,

      **Defendant.**

Civil Action No. 06-903 (JMF)

**MEMORANDUM OPINION**

Now pending before the Court is <u>Defendant's Response to Order to Show Cause</u> [#34] ("Resp."), and plaintiff's opposition thereto [#36] ("Opp.").

**Background**

The facts and procedural history of this case are further set out in this Court's previous opinions.  <u>See Friendship Edison Public Charter Sch. Collegiate Campus v. Nesbitt</u>, 532 F. Supp. 2d 121 (D.D.C. 2008); and <u>Friendship Edison Public Charter Sch. Collegiate Campus v. Nesbitt</u> 583 F.Supp.2d 169 (D.D.C. 2008).

Briefly, Nesbitt attended Friendship Edison Public Charter School Collegiate Campus ("Friendship Edison") from 2003 to 2005. Administrative Record [#16] ("AR") at 5.  After a determination in a due process hearing that Nesbitt was being denied a free and adequate public education ("FAPE"), he was placed at High Road Academy, a full-time special education institution. AR at 4 and 103.

Friendship Edison was ordered to convene a team to develop a compensatory education plan, but never did so. <u>Id.</u> at 105.  Nesbitt filed another request for a hearing.

AR at 5.  The hearing officer ordered defendant to receive 3,300 hours of private tutoring as compensatory education.  Id.  I vacated the award because it did not comply with the standard set forth in Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2005).  See Friendship Edison Public Charter Sch. Collegiate Campus, 532 F. Supp. 2d at 125-26.  I also ordered the defendant to show cause why I should award him a specific plan for compensatory education, but defendant stated he could not show cause because he had not been evaluated since 2005.  I also ordered plaintiff to pay for a psycho-evaluation, an educational evaluation, and a vocational assessment.

With the completion of the evaluations, I gave defendant another opportunity to show cause why he should be awarded a compensatory education plan, and he submitted a response that concluded he was entitled to 3,300 hours of tutoring, the exact same amount specified in the award that I vacated.  I set an evidentiary hearing where I expected defendant to provide a witness or a number of witnesses to testify, either from personal knowledge, or, if they were appropriately qualified, as experts about the following topics: (1) the level at which the defendant was functioning when he first attended Friendship Edison; (2) the level to which defendant would have progressed during his time at Friendship Edison, but for the denial of a FAPE; and (3) why 3,300 hours of tutoring will put the defendant in the position he would have been in but for the denial.  See Memorandum Opinion [#40] (citing Brown v. District of Columbia, 568 F. Supp. 2d 44, 53-54 (D.D.C. 2008) (upholding compensatory education award that was supported by testimony of education expert)).

**Evidentiary Hearing**

At the evidentiary hearing, defendant produced one expert witness, Dr. Derek Marryshow.  The witness had prepared the proposed Compensatory Education Plan upon which the defendant's response to show cause was based.  Defendant's response to the show cause order stated that he has been receiving individualized tutoring since 2007 and has completed 1,400 hours in six subjects: math, English, history, science, geography and fashion design.  According to defendant, these hours were necessary to compensate him for his loss of FAPE.  In addition, Dr. Marryshow suggested that he should receive an additional 950 hours of tutoring in both broad math and reading, because Nesbitt is currently deficient in math and reading.  The doctor thought that a reasonable goal for the defendant, as an outcome of the tutoring, was to earn his GED.

At the hearing, Dr. Marryshow provided expert testimony regarding the level that defendant should have progressed during his time at Friendship Edison but for the denial of a FAPE.  He further provided testimony to support his compensatory education plan of 1,900 hours of tutoring in broad math and reading.  No additional evidence was presented regarding the level at which the defendant was functioning when he entered Friendship Edison.

According to Dr. Marryshow, he created the compensatory education plan by assessing where Nesbitt was functioning cognitively and academically when he left Friendship Edison and again where he was functioning in 2008, after attending High Road Academy and receiving 1,400 hours of tutoring.  He also considered where Nesbitt should have been functioning when he left Friendship Edison versus where he in fact was functioning.  According to Dr. Marryshow, a student functioning at an average level is expected to progress one grade level during an academic year.  Similarly, a student

functioning above or below average would anticipate progressing either more or less than one grade level during one academic year, based on his/her academic and cognitive functioning.  According to the multiple evaluations, Nesbitt functions cognitively in the low average to borderline range; academically, he functions at about third grade level. Nesbitt is faced with both learning and emotional disabilities.  Based on the 2005 and 2008 evaluations, which show Nesbitt's progress after receiving FAPE, Dr. Marryshow would expect Nesbitt to progress at about one half the rate of an average student during one academic year.  Thus, in three academic years, the amount of time Nesbitt attended Friendship Edison, Nesbitt would be expected to progress about one and one half grade levels.  Dr. Marryshow said that Nesbitt would progress at these expected rates, if there was no regression.  If there was regression, due to the denial of FAPE or interruption in instruction, Nesbitt's progress may reflect a slower rate, because he would have to recover some progress lost due to regression.  Nothing in the record can tell the court at what level exactly Nesbitt was functioning when he entered Friendship in 2003.  Dr. Marryshow did not rely on the psychological evaluation conducted in 2002 to provide some idea of where Nesbitt was functioning in 2003; however, that evaluation shows that he was at approximately an average of a third grade level.  According to Dr. Marryshow, Nesbitt should have then progressed 1.5 grades from that level by the time he reached High Roads Academy.  The evaluation in 2005 shows that he was still functioning at a third grade level in 2005.  Thus, Nesbitt did not progress at the expected rate of 1.5 grade levels in his three years at Friendship Edison.  Dr. Marryshow suggests that, in fact, there is evidence that Nesbitt regressed in some areas.

According to Dr. Marryshow, to compensate Nesbitt for the loss of FAPE, Nesbitt should receive individualized tutoring that would provide him the educational benefit to progress 1.5 grade levels.  Based on Dr. Marryshow's assessment of Nesbitt's record, Nesbitt would be expected to progress about 1.5 grade levels in the equivalent of about three academic years, which is about 3,600 hours of instruction.  Dr. Marryshow makes some adjustment for the benefit of one-on-one tutoring, because the progress Nesbitt made at High Roads Academy reflects a student-teacher ratio of 10:2.  Dr. Marryshow also takes into account the 1,400 hours of tutoring already received by Nesbitt and concludes that Nesbitt requires 950 hours in broad math tutoring and 950 hours in broad reading tutoring  in order to place Nesbitt in the position he would have been but for the denial of FAPE.

Once again, when added together, these numbers reflect the same calculation provided by the hearing officer that I have rejected.  Plaintiff's counsel argues that Dr. Marryshow's testimony, despite reflecting the language of the IDEA and relevant case law, is an implausible attempt to predicate his report on the very proposed compensatory education plan that I have already deemed insufficient.  Plaintiff's counsel was concerned about several areas of Dr. Marryshow's testimony.  First, there is no way to discern whether Nesbitt's progress between 2005 and 2008 was due to his attendance at High Roads or to the individualized tutoring.  Second, the 2008 evaluation of Nesbitt did not demonstrate that he met the expected progress rates that Dr. Marryshow testified he would expect Nesbitt to make.  In fact, Nesbitt regressed half a grade level in math reasoning.  Third, Dr. Marryshow proposes the same amount of tutoring in both broad math and broad reading, despite the fact that the evaluations of Nesbitt clearly indicate he

has not progressed as far in math as in reading.  According to plaintiff's counsel, a more individualized plan would reflect this weakness in math and provide Nesbitt with additional math tutoring.

An additional issue raised was that Dr. Marryshow's proposed compensatory education plan and his testimony supported the goal of preparing Nesbitt for completion of his GED.  In his testimony, Dr. Marryshow tried to assure the court that this goal did not contravene the fact that this was a compensatory education plan and not an individualized education plan.  Instead, Dr. Marryshow argued that it is a waste of resources for Nesbitt not to use his compensatory education to work towards a goal.  Dr. Marryshow insisted that, while the plan was compensatory, it is useful to provide a framework in which to administer the 1,900 hours of tutoring; working towards a GED provides such a framework.

## Discussion

The court must decide whether Dr. Marryshow applied an individualized, qualitative methodology calculated to provide defendant the educational benefit that likely would have accrued had he not been denied FAPE.  See Reid, 401 F.3d at 522-25. Dr. Marryshow has proposed the same compensatory education plan as the hearing officer, who had applied a "cookie-cutter" approach.  See e.g. Id. at 523.  I have, however, stated previously that "a compensatory award constructed with the aid of a formula is not *per se* invalid." Friendship Edison Public Charter Sch. Collegiate Campus, 532 F. Supp. 2d at 123.  Compensatory education is an equitable remedy that the court may award in crafting appropriate relief.  See Parents of Student W. v. Puyallup Sch. Dist. No. 3, 31 F.3d 1489, 1497 (9th Cir. 1994) (compensatory education under IDEA "is

not a contractual remedy, but an equitable remedy").  A formula-based methodology for crafting the compensatory award may in some circumstances be acceptable if it is not a mechanical calculation, but incorporates a qualitative approach "[aimed] to place the disabled [child ] in the same position [s/he] would have occupied but for the school district's violation of IDEA." Reid, 401 F.3d at 519.

Dr. Marryshow made his determination based on the record that existed without interviewing the student, his former or current instructors, or conducting any additional qualitative research.  The question is whether his resulting plan meets the qualitative standard of Reid. Id.

I have the authority to solicit additional evidence from parties, as I have done, and "fashion an appropriate compensatory education award based on the principles" outlined in Reid. Id. at 526.  In light of the age of Nesbitt, I determined that time was of the essence and that, rather than remand to a hearing officer, I would exercise my authority in this case.  See Memorandum Opinion [#40] at 1.  While I do have the authority to fashion a compensatory education award, I certainly do not have the expertise of an educator.  In ordering an evidentiary hearing, I had hoped that the expert testimony would provide guidance on the appropriate award; however, both Dr. Marryshow's proposed compensatory education plan and his supporting testimony were unsatisfactory for the reasons now to be explained.

I now must decide whether these deficiencies are so egregious that the plan fails the standard set by the court of appeals and prevents me from fashioning an appropriate compensatory education award.  Fortunately, they do not.  Enough of a record and an explanation of Dr. Marryshow's qualitative methodology exist for the court to determine

7

that, despite its insufficiencies, the proposed compensatory education plan is "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." See Reid, 401 F.3d at 524.

Based on my understanding of his testimony, a mathematical representation of Dr. Marryshow's methodology would be:

$$x - y = z$$

where:  $x =$  the projected grade-level progress a student would make without denial of FAPE*

$y =$  the actual grade-level progress the student made in spite of the denial of FAPE

$z =$  the educational benefit of grade-level progress the student made that should have accrued, but did not, due to loss of FAPE

$r =$  regression, lost progress due to denial of FAPE and delays in compensatory education**

 * The unit for each variable is grade-level per annum

 ** Regression is recognized but unaccounted for in the model.

To determine the value of x, an expert would need to conduct an individualized assessment of a student's cognitive and educational capabilities. The expert would then determine the projected rate of the student's progress in comparison to students of average cognitive and educational capabilities. Dr. Marryshow's methodology relies on grade-level per annum as the unit of measure for this calculation. What Dr. Marryshow

failed to explain fully is how an expert would determine the actual grade-level progress the student made, even with the denial of FAPE, or variable "y".  Perhaps he assumed that it is a given that "y" would equal zero, but that would violate the standard in <u>Reid</u> because it would lead to a "cookie-cutter," one-to-one compensatory education plan. Logically, however, to determine the value of "y," an expert would need to compare the student's cognitive and education level at the time just prior to when the denial of FAPE began to the student's cognitive and education level at the time the denial of FAPE ended.  Thus, the value of "y" is itself an equation:

$$b - a = y$$

| | | |
|---|---|---|
| where: | a = | the student's cognitive and educational level expressed as a grade-level assessment at the time just prior to when the denial of FAPE began |
| | b = | the student's cognitive and educational level expressed as a grade-level assessment at the time the denial of FAPE ended |
| | y = | the actual grade-level progress the student did make per annum |

Applying Dr. Marryshow's methodology to Nesbitt's record, Dr. Marryshow's testimony indicates that the equation should state:

$$1.5 - 0 = 1.5$$

The problem in this execution of the equation is that Dr. Marryshow reaches the conclusion that "y" equals zero without applying the additional equation necessary to determine the true value of "y."  This would be unacceptable under the <u>Reid</u> standard, because it turns the individualized methodology into the "cookie-cutter" equation <u>Reid</u>

sought to eliminate; however, this is not the death knell for the methodology, just for its incomplete execution.

Nothing in the record can tell the court at what level exactly Nesbitt was functioning when he entered Friendship in 2003; however the 2002 psychological evaluation of Nesbitt comes very close and could lead allow for an estimation of where Nesbitt was functioning in 2003.  To comport with <u>Reid</u>, Dr. Marryshow could have used Nesbitt's 2002 evaluations to determine an estimated value for "a."  The 2005 evaluations are clearly the value of "b."  Therefore, to establish an estimated value for "y," Dr. Marryshow had only to compare the 2002 evaluations to the 2005 evaluations. The evaluation 2002 shows that Nesbitt was at approximately an average of a third grade level in 2002, with great variation among areas of relative strengths and weaknesses. Nesbitt was functioning as high as a grade equivalency level of 4.8 in listening comprehension and as low as a grade equivalency level of 1.2 in pseudoword decoding. The evaluation in 2005 shows the he was still functioning at about a third grade level when he left Friendship Edison, with slight progress in some skill areas.  Thus, "y" would equal approximately 3 (for a third-grade level) minus approximately 3 (again for a third-grade level), or zero.  The value for "y" would indicate that approximately no progress in grade level was made during Nesbitt's time at Friendship Edison.

Thus, the final equation for Nesbitt would still be, as Dr. Marryshow indicated:

$$1.5 - 0 = 1.5$$

To compensate for the loss of accrued education benefit due to the denial of FAPE, Nesbitt is entitled to a compensatory education plan that compensates him for the lost progress of one and a half grade levels.  Dr. Marryshow indicates that the proposed 1,900

hours of tutoring should do this for Nesbitt, albeit approximately.  Dr. Marryshow's compensatory education plan is not based on service hours denied, but grade-level progress not made by Nesbitt, or educational benefits that did not accrue due to loss of FAPE.  Thus, Dr. Marryshow had to employ yet another equation to convert the unit of measurement from grade level equivalencies to hours.

Ideally, it seems, Dr. Marryshow would prefer to avoid the conversion, as it leads to imprecision.  Dr. Marryshow would prefer to have Nesbitt retested after a period of time to see whether or not he has met the benchmarks of grade level progress. Nevertheless, a conversion is necessary, as the current unit of measurement does not provide a concrete number from which a compensatory education award can be executed. Dr. Marryshow chooses to convert the grade level equivalencies to hours of instruction as the unit of measurement.  Accordingly, he estimates that, in an academic year, Nesbitt would receive an average of 120 hours of instruction a month for about 10 months, equaling about 1200 hours a year.  For an average child, the conversion of grade levels to hours would be:

$$g*1200 = n$$

where:        g =        grade level progress

                    n =        number of hours for grade level progress

Relying on the previous assessment that Nesbitt would be expected to progress at about half the rate of an average child, meaning he would need twice as much time to progress the same number of grade levels, the equation for Nesbitt should be:

$$(g*1200)*2 = \text{number of hours for grade level progress for Nesbitt}$$

11

Applying this to the assessment that Nesbitt failed to progress the expected 1.5 grades, the equation for Nesbitt would be:

$$(1.5*1200)*2 = 3600$$

Dr. Marryshow makes some adjustments to this number, acknowledging that FAPE would not necessarily be a 1:1 instructor to student ratio, as Nesbitt would have in tutoring, leading to the final number of 3,300 hours of tutoring.  Dr. Marryshow acknowledges that Nesbitt has already received 1,400 hours of tutoring; therefore, Nesbitt requires an additional 1,900 hours of tutoring to compensate him for the educational benefit that should have accrued but for the denial of FAPE.

The only flaw in the methodology is that, applying the equations, Nesbitt also did not progress at the expected rate in the almost three years of instruction at High Road which included individualized tutoring.  Only in word reading did Nesbitt hit the expected rate.  While this discrepancy does raise some questions about the methodology, Dr. Marryshow stated in his testimony that the development of a compensatory education plan is not a science.  Further, the only method of determining if the plan was correct is to evaluate the student at the conclusion of the plan and determine if his individual benchmarks were met.  If they were not met, then the plan was not entirely accurate.  Working with an imperfect science to develop an individualized education plan for a student who is still enrolled in school is much easier than fashioning a compensatory education plan for a person long after the violation of IDEA occurred.  Nesbitt is almost twenty-five years old; he is due compensation for the denial of FAPE.  Defendant provides the court with a compensatory education plan based on a science which defendant's expert admits is imperfect.  Despite this, I find that the plan meets the

standard set by the Court in <u>Reid</u>.  Plaintiff has not presented any evidence that Dr.

Marryshow's plan does not meet the <u>Reid</u> standard, save the fact that it reflects the same

number of hours proposed by the hearing officer.  <u>See e.g.</u> <u>Mary McLeod Bethune Day</u>

<u>Academy Public Charter School v. Bland</u>, 555 F.Supp.2d 130, 137 (D.D.C. 2008)

(finding that plaintiff "[had] not adduced evidence, other than the obvious connection

between the service hours denied and the compensatory hours awarded" to suggest award

was of the type rejected by <u>Reid</u>).  Presumably, Dr. Marryshow's methodology, when

correctly applied, would not always be a one-to-one correlation between service hours

denied and compensatory hours awarded.[1]  Plaintiff did not present any evidence to the

contrary.

   I originally rejected the Hearing Officer's award of 3,300 hours of tutoring

because it was not "adequately individualized or supported by the record." <u>Friendship</u>

<u>Edison Public Charter Sch. Collegiate Campus</u>, 532 F. Supp. 2d at 125.  In accepting

defendant's proposed compensatory education award, I am not accepting the same award

provided by the hearing officer, despite the similarities in the outcome.  Instead,

defendant has provided evidence that the award of 950 hours of tutoring in broad math

and 950 hours of tutoring in broad reading, in addition to the tutoring already received by

Nesbitt, is reasonably calculated to provide the educational benefits that likely would

have accrued from special education services the school district should have supplied in

---

[1]  An example of this would be if a student was expected to progress at one-half the rate of average students yet evaluations of his grade level at the beginning and end of the periods where he was denied FAPE showed that he in fact progressed at one-third of the rate of average students.  When fashioning his compensatory education award, the methodology would be able to take into consideration both the progress the student made and that which he did not make during the period he was denied FAPE.  Thus, the final award would be calculated to help the student progress only the amount that he was deficient due to the denial of FAPE.

the first place.  As Dr. Marryshow's testimony makes clear, broad reading encompasses all reading and written expression.

I must make one clarification as to the proposed compensatory education plan. While I agree with Dr. Marryshow that it is useful to have a goal to work towards in implementing the plan, the attainment of a GED is not the purpose of the compensatory education award.  In fact, given defendant's estimated rate of progress, it is highly unlikely that a GED is attainable through the implementation of this award.  Defendant will likely need additional support to earn his GED that is beyond the responsibility of plaintiff and the compensatory education award to which defendant is entitled.  Thus, while I will endorse the attainment of a GED as the framework by which tutors may implement the compensatory education award, the attainment of the GED is neither the purpose of the award nor the likely outcome.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE