UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FRIENDSHIP EDISON PUBLIC CHARTER SCHOOL COLLEGIATE CAMPUS,**

**Plaintiff,**

v.

**KENDALL NESBITT,**

**Defendant.**

Civil Action No. 06-903 (JMF)

**MEMORANDUM ORDER**

Pending before me and ready for resolution is plaintiff's Motion for Stay of November 19, 2009 Judgment [#49] ("Mot. for Stay").

**I. Background**

The facts and procedural history of this case are set out in previous opinions by this Court. See Friendship Edison Public Charter Sch. Collegiate Campus v. Nesbitt, 532 F. Supp. 2d 121 (D.D.C. 2008) ("Nesbitt I"); and Friendship Edison Public Charter Sch. Collegiate Campus v. Nesbitt, 583 F. Supp. 2d 169 (D.D.C. 2008) ("Nesbitt II").

I issued a final judgment and memorandum opinion in this case on November 18, 2009, accepting Nesbitt's proposed compensatory education award and granting an additional 1,900 hours of tutoring in broad math and broad reading. Friendship Edison Public Charter Sch. Collegiate Campus v. Nesbitt, 669 F. Supp. 2d 80 (D.D.C. 2009) ("Nesbitt III"). This is in addition to 1,400 hours in tutoring already received by the defendant, amounting to a total compensatory education award of 3,300 hours. This was the same number of hours awarded by

the hearing officer in this case which I originally rejected because it was not "adequately individualized or supported by the record." Nesbitt I, 532 F. Supp. 2d at 125. However, this award in the final judgment was "not . . . the same award provided by the hearing officer, despite the similarities in the outcome." Nesbitt III, 669 F. Supp. 2d at 87. Instead, the defendant provided evidence that the award of 950 hours of tutoring in broad math and 950 hours of tutoring in broad reading, in addition to the tutoring already received by Nesbitt, is "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." Id. at 85 (quoting Reid v. District of Columbia, 401 F.3d 516, 524 (D.C. Cir. 2005)). The plaintiff has filed an appeal and a motion to stay the judgment pending appeal which is now before the Court. For the reasons explained below, that motion is denied.

## II. Legal Standard

Last year the Supreme Court described the "traditional standards" for the issuance of a stay pending appeal as follows: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 129 S. Ct. 1749, 1756 (2009). The first two factors are the most critical. Id. at 1761. See also id. at 1763 (Kennedy, J., concurring) ("This is not to say that demonstration of irreparable harm without more is sufficient to justify a stay of removal. The Court has held that '[a] stay is not a matter of right, even if irreparable injury might otherwise result.'") (citing Va. Ry. Co. v. United States, 272 U.S. 658, 672 (1926)).

The court of appeals has emphasized that the traditional factors are "typically evaluated on a 'sliding scale.'" Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009) (quoting Davenport v. Int'l Bhd. Of Teamsters, 166 F.3d 356, 361 (D.C. Cir. 2009)). A strong argument in favor of one factor may excuse a relatively weaker showing on another; however, in framing the sliding scale, the court of appeals has stated: "Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such substantial indication of probable success [on the merits], there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977); see Davis, 571 F.3d at 1292 ("But Holiday Tours did not eliminate the other factors. The court simply acknowledged that a lessor likelihood of success might suffice if each of the other three factors clearly favors granting the injunction.").

In addition, in analyzing when a harm is irreparable in the context of economic harms, the movant must show that the harm would threaten the existence of its business or that the moneys lost as a result of the lack of a stay would be unrecoverable. See, e.g., Wis. Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985) ("The key in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.") (citing Va. Petroleum Jobbers Ass'n v. Fed Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)). The judges of this Court have concluded that insolvency to pay a damage award may constitute irreparable harm even

though economic harm is generally not considered to qualify. Carabillo v. ULLICO Inc. Pension Plan and Trust, 355 F. Supp. 2d 49, 55 (D.D.C. 2004) ("economic loss may constitute irreparable harm where defendant would become insolvent or otherwise judgment-proof prior to the conclusion of litigation thus making the plaintiff's alleged damages unrecoverable"); Foltz v. U.S. News and World Report, Inc., 613 F. Supp. 634, 643 (D.D.C. 1985) (concluding that the unavailability of assets to pay a damage award would irreparably injure the plaintiffs).

Thus, in order for Friendship Edison to win its motion for a stay, it must show strong likelihood of success on the merits, unrecoverable economic harm, and that the public interest in the ultimate resolution of the controversy favors the stay. Finally, I have to balance the harm the plaintiff claims against the harm the defendant will suffer if the relief I awarded is postponed until the appeal is resolved. I must also consider where the public interest lies.

### III. Analysis

#### A. Likelihood of success on the merits

Plaintiff insists that it has a likelihood of success on the merits. It bases its argument on the fact that the amount of compensatory education that I awarded Nesbitt in the final judgment is the same amount as was awarded by the hearing officer, an amount which I had previously rejected. While Nesbitt III noted that the evidence produced by the defendant's expert at the evidentiary hearing was lacking in some respects, I concluded any deficiencies were "not so egregious that the plan fail[ed] the standard set by the court of appeals and prevent[ed] me from fashioning an appropriate compensatory education reward." Nesbitt III, 669 F. Supp. 2d at 85. There was enough evidence in the record for me to determine that the plan was "reasonably calculated to provide the educational benefits that likely would have accrued from special

4

education services the school district should have applied in the first place." Reid, 401 F. 3d at 524.

The plaintiff offers no new rationale for why that conclusion was incorrect, beyond the argument that I explicitly rejected in Nesbitt III. That the number of hours awarded was the same does not mean that the rationale for those hours was identical. Unlike the hearing officer, who provided the original compensatory educational award based on a mere "cookie-cutter" formula, the final judgment entered by this Court was based upon evidence presented by defendant and was adequately individualized and supported by the record. That the Court itself found some deficiencies in the defendant's expert testimony does not mean that the award was baseless or unfounded, because it was supported by other proof and considerations that this Court found persuasive.

Further, if any showing of likelihood of success would tip the scales on the other factors in favor of granting the stay, then courts would always stay their judgments pending appeal. There is, after all, always some possibility of a successful appeal. But, stays of judgments are extraordinary remedies that interfere with the orderly and normal administration of justice. See, e.g., Nken, 129 S. Ct. at 1757 ("a reviewing court may not resolve a conflict between considered review and effective relief by reflexively holding a final order in abeyance pending review. A stay is an intrusion into the ordinary process of administration and judicial review, and accordingly is not a matter of right.") (citations and quotations omitted); and id., at 1762 (Kennedy, J., concurring) ("a stay . . . is an extraordinary remedy that should not be granted in the ordinary case, much less awarded as a matter of right.") (citations omitted). In light of this demanding standard, a possibility of success is not enough. Plaintiff cannot establish a strong

likelihood of success.

## B. Harm to the parties

Concededly, the money spent to tutor the defendant, estimated to be $198,000, cannot be recovered if the award is vacated on appeal; however, this does not end the inquiry. If the judgment is stayed, Nesbitt, who is now 25 years old, will still not receive the free and adequate public education that he was entitled to receive more than seven years ago. Plaintiff argues that there will be no harm to defendant because he has already received some tutoring (1,400 hours of the 3,300 awarded) and that the tutor could continue to provide this work for free, while the appeal is underway. Plaintiff thus asks defendant to continue to forego the education he was entitled to receive and drafts the tutor to work for free, because plaintiff does not want to pay to remedy its own failures until it exhausts its right to appeal.

The harm to Nesbitt in staying this award is significant. He is now 25 years old and has been attempting to receive the education he was entitled to years ago, but still he has not been made whole. Further delaying this process mocks the goals of the education of special-needs citizens. Thus, while the plaintiff may sustain unrecoverable economic harm, it is outweighed by the significant harm to the defendant if the stay is granted. I also must consider the dilemma faced by the tutor who must either stop working with the defendant or work for nothing.

## C. The Public's Interest

The public has an interest in ensuring that all students receive a free and adequate public education, in accordance with the congressional mandate contained in the IDEA. This includes Nesbitt and the rest of the students at Friendship Edison Charter School. While I recognize that money spent on the defendant will not be available for the benefit of the other students, Nesbitt's

unique situation requires that he be given priority because of the delay he has encountered. The public has a vital interest in the effectuation of the Congressional demand that students like Nesbitt secure a free and adequate public education. In Nesbitt's case, further delay in achieving that goal is unconscionable.

### IV. Conclusion

For the foregoing reasons, I find that there is little likelihood of success on the merits of the plaintiff's appeal, that the harm to Nesbitt because of further delay outweighs the economic harm plaintiff will suffer and that there is a profound public interest in eliminating further delay. I therefore conclude that plaintiff has failed to meet its burden and that the <u>Motion for Stay of November 18, 2009 Judgment</u> is hereby denied.

**SO ORDERED.**

                                                  JOHN M. FACCIOLA
                                                  UNITED STATES MAGISTRATE JUDGE