UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FRIENDSHIP EDISON PUBLIC
CHARTER SCHOOL COLLEGIATE
CAMPUS,**

            **Plaintiff,**

       v.

**KENDALL NESBITT,**

            **Defendant.**

Civil Action No. 06-0903 (JMF)

## MEMORANDUM OPINION

Now pending before the Court is Defendant's Supplemental Post Judgment Motion for Attorneys' Fees and Costs [#53] ("Def. Mot.") and Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Supplemental Post Judgment Motion for Attorneys' Fees and Costs [#54] ("Opp.").

Defendant seeks an award of $20,673.33 in fees and $2,625.00 in costs for professional services rendered before this Court by Attorney Jude Iweanoge, as well as $7,510.10 for professional services rendered by The Law Offices of Christopher N. Anwah, PLLC, his attorneys for the underlying administrative litigation. For the reasons stated herein, defendant's motion will be granted in part and denied in part.

## BACKGROUND

The facts and procedural history of this case are set out in previous opinions by this Court. See Friendship Edison Public Charter Sch. Collegiate Campus v. Nesbitt, 532 F. Supp. 2d

121 (D.D.C. 2008) ("Nesbitt I"); and Friendship Edison Public Charter Sch. Collegiate Campus v. Nesbitt, 583 F. Supp. 2d 169 (D.D.C. 2008) ("Nesbitt II").

This Court issued a final judgment and memorandum opinion in this case on November 18, 2009, accepting Nesbitt's proposed compensatory education award and granting an additional 1,900 hours of tutoring in broad math and broad reading. Friendship Edison Public Charter Sch. Collegiate Campus v. Nesbitt, 669 F. Supp. 2d 80 (D.D.C. 2009) ("Nesbitt III"). This award was in addition to 1,400 hours in tutoring already received by the defendant, amounting to a total compensatory education award of 3,300 hours. This was the same number of hours awarded by the hearing officer in this case, which this Court originally rejected because it was not "adequately individualized or supported by the record." Nesbitt I, 532 F. Supp. 2d at 125. However, this award in the final judgment was "not . . . the same award provided by the hearing officer, despite the similarities in the outcome." Nesbitt III, 669 F. Supp. 2d at 87. Instead, the defendant provided evidence that the award of 950 hours of tutoring in broad math and 950 hours of tutoring in broad reading, in addition to the tutoring already received by Nesbitt, was "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." Id. at 85 (quoting Reid v. District of Columbia, 401 F.3d 516, 524 (D.C. Cir. 2005)).

Defendant filed his motion for attorneys' fees on December 2, 2009. Plaintiff filed an appeal on December 3, 2009 and moved to stay the judgment on the motion for attorneys' fees pending appeal on December 29, 2009. This Court denied plaintiff's motion to stay the judgment pending appeal on April 12, 2010. Defendant filed his supplemental motion for attorneys' fees

and costs on April 13, 2010.[1]  In ruling on the motion, this Court will consider the defendant's eligibility for attorneys' fees and the reasonableness of the fees requested.

## DISCUSSION

This Court entered judgment for defendant under the Individuals with Disabilities Education Act ("IDEA"), which contains several provisions regarding attorneys' fees.  "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i).[2]  The statute provides that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.  No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(i)(3)(C).  There are three key issues that must be addressed by this Court: (1) whether defendant is entitled to attorneys' fees; (2) whether the number of hours billed was reasonable; and (3) whether the hourly rates billed by defendant were reasonable.

### I. Defendant's Eligibility for Attorneys' Fees

In determining whether the defendant is eligible for attorney's fees, this Court must determine whether the defendant was a "prevailing party." 20 U.S.C. § 1415(i)(3)(B)(i).  The Supreme Court has held that there must be a "judicially sanctioned change in the legal relationship of the parties" for the party to be awarded attorney's fees as a prevailing party.

---

[1] The appeal was dismissed by the Court of Appeals in a *per curiam* order issued September 29, 2010.  See Order of USCA [#56].

[2] All citations to the United States Code are to the electronic versions on Lexis and Westlaw.

3

Adams v. District of Columbia, 231 F. Supp. 2d 52, 54 (D.D.C. 2002) (quoting Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001)). In the context of fee-shifting statutes like IDEA, the Supreme Court has construed the term "prevailing party" to require "judicial imprimatur on an enforceable judgment or consent order." Alegria v. District of Columbia, 391 F.3d 262, 263 (D.C. Cir. 2004) (citing Buckhannon Bd. & Care Home, 532 U.S. at 604-05).

Defendant is the prevailing party in this case. This Court issued its final judgment on November 18, 2009, ordering the plaintiff to cover the cost of the 1,400 hours of tutoring already administered and the cost of an additional 950 hours of tutoring in broad reading and 950 hours of tutoring in broad math as compensatory education. Therefore, there was a judicially sanctioned change in the legal relationship of the parties, and there was judicial imprimatur on an enforceable judgment. Defendant, therefore, may be awarded reasonable attorneys' fees by this Court. 20 U.S.C. § 1415(i)(3)(B)(i).

Plaintiff nevertheless contends that defendant's entitlement to fees can only begin on January 31, 2008, the date this Court issued its memorandum opinion and granted plaintiff summary judgment. Nesbitt I, 532 F. Supp. 2d at 121. See Opp. at 4. Under this theory, all time claimed prior to that date is non-compensable. It cannot seriously be suggested that a party prevails only from the moment the court rules in his favor so that all the time necessarily expended achieving that result is not compensable.

Plaintiff also asserts that time spent at the administrative level is not compensable because defendant did not prevail. Id. But, the defendant did prevail on the administrative level, with the hearing officer awarding the defendant 3,300 hours of tutoring. Nesbitt I, 532 F. Supp.

4

2d at 122.

The only question truly presented is whether the statute permits an award of fees for services performed at the administrative level, before the complaint is filed in court.

The complaint in this case was filed on May 12, 2006, but does not appear to have been served until December 20, 2006. See Minute Order of November 14, 2006 (permitting service to be accomplished by December 20, 2006).

As to the two lawyers for whom compensation is sought, Iweanoge indicated: "Defendant has not billed for any work performed at the administrative level but instead has billed for services performed by his attorneys to effect the hearing officer's decision and to assist his current counsel in defending the instant litigation. Most of the services billed for relate to the necessary services performed in the instant litigation." Defendant's Reply to Plaintiff's Opposition to Defendant's Supplemental Post Judgment Motion for Attorneys' Fees and Costs [#55] at 2-3.

The first entry on the invoice for Iweanoge is dated 1/23/07 and speaks to reviewing the complaint filed in this case that, as noted above, was served on December 20, 2006. The invoice for Anwah however, begins with an entry dated 7/11/06, and has entries from that date to 1/31/07, when there is the first indication of the existence of this case. Thus, while Iweanoge does not claim any compensable time prior to the filing of the complaint in this Court, Anwah does, creating the question of whether Anwah's time spent working on the administrative phase of the case is compensable.

The statute permitting the award of fees does not specifically speak to whether time spent in administrative proceedings is compensable. The D.C. Circuit, however, has long held that the

IDEA authorizes parents who prevail at an administrative due process hearing to recover attorneys' fees. See Moore v. District of Columbia, 907 F.2d 165, 176 (D.C. Cir. 1990) (en banc) ("[W]e conclude that both the text and the legislative history of HCPA[3] evidence congressional intent to authorize recovery of fees by a parent who prevails in EHA administrative proceedings."); see also Dickens v. Friendship-Edison P.C.S., 639 F. Supp. 2d 51, 57 (D.D.C. 2009) (noting that the IDEA authorizes parents who prevail at an administrative due process hearing to recover attorneys' fees). Surely, time spent aiding the student through the necessary administrative proceedings can hardly be described as invariably "unreasonable" and not compensable as a matter of law. I therefore will not exclude all time prior to the filing of the complaint but will assess its reasonableness on other grounds.[4]

## II. Reasonableness of Attorneys' Fees

Having determined that the defendant is entitled to reasonable attorneys' fees, the Court must now turn its attention to the appropriate measure of those fees. The text of the IDEA provides that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). IDEA, however, allows for a reduction in the amount of attorneys' fees when the Court finds (1) that "the amount of the attorneys' fees otherwise

---

[3] The Handicapped Children's Protection Act of 1986 ("HCPA"), Pub. L. No. 99-372, 100 Stat. 796, was an amendment to the Education of the Handicapped Act that, in part, authorized the award of reasonable attorneys' fees to certain prevailing parties. The Education of the Handicapped Act was revised and renamed as the Individuals with Disabilities Education Act in 1990.

[4] In light of the Court of Appeals' dismissal of this case, there is no reason to stay the execution of the judgment awarding fees.

authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience," or (2) that "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F)(ii)-(iii). Therefore, if this Court finds that the defendant's counsel used an unreasonable hourly rate or billed an excessive amount of hours, then the Court may reduce the amount of attorneys' fees granted to the defendant. When a party moves for attorneys' fees, it bears the burden of establishing "all elements of the requested fee award, including entitlement to an award, documentation of appropriate hours, and justifications of the reasonableness of the billing." Smith v. District of Columbia, 02-CIV-373, 2005 WL 914773, at *2 (D.D.C. Apr. 18, 2005) (citing Blum v. Stenson, 465 U.S. 886, 898 (1984)). In determining whether the attorneys' fees requested by the defendant are reasonable, this Court must consider (1) whether the hourly rate charged by the defendant's lawyers was reasonable, and (2) whether the number of hours expended was reasonable.

A. Reasonableness of Hourly Rate

Plaintiff claims that the defendant failed to provide sufficient evidence regarding the attorneys' billing practices or the attorneys' skill and reputation. Opp. at 6. Plaintiff also claims that the rates billed by the defendant for several lawyers exceeded the rates set out in the District of Columbia Public School ("DCPS") fee schedule for attorneys with similar experience. Id.

The DCPS provides guidelines for determining the reasonableness of rates, establishing bands of fees for attorneys of different levels of experience: (1) an attorney admitted to the bar for less than five years: $135-170; (2) an attorney admitted to the bar for five to eight years: $150-225; (3) an attorney admitted to the bar for more than eight years: $200-275; and (4)

7

paralegals and law clerks: $90. Def. Mot., Ex. 1.

As I pointed out at length in my decision in MacClarence v. Johnson, 539 F. Supp. 2d 155, 159-60 (D.D.C. 2008), the promulgation of such rates by governmental entities who are often subject to fee shifting statutes is commendable. It is particularly faithful to the Supreme Court's command in Hensley v. Eckerhart, 461 U.S. 424, 437 (1983), that "[a] request for attorney's fees should not result in a second major litigation."

Since the defendant's counsel agrees to accept the DCPS rates I will use them. Plaintiff nevertheless objects on the grounds that the defendant's counsel does not show his actual billing rates and that his failure to provide sufficient information about his qualifications and experience justifies a 25% reduction from the DCPS rates. Opp. at 7.

First, since I am using the DCPS rates, the defendant's counsel's actual billing rates are irrelevant. Second, the plaintiff does not explain how it derives the 25% reduction it seeks. Like the United States Attorney's Office, which uses years of practice as the criterion for the rates it will pay to prevailing counsel, the DCPS pegs its rates to years of service. That, in turn, is a reflection of the market for legal services in which clients are universally charged rates that are a function of the years of experience of the billing lawyer. The use of that criterion is reasonable and reflective of how the market for legal services actually works. Indeed, it is universally accepted as a means by which the market values all services; there are very few industries that I am aware of whose members brag that they are cheap because they are inexperienced. On the other hand, a reduction of 25%, pulled from the sky, without any evidentiary support for the proposition that the market would impose such a reduction, is unreasonable by definition.

1. *Iweanoge's Rates*

The defendant tells the Court that Iweanoge was admitted to the Maryland Bar in 2003 and to the District of Columbia Bar in 2005. The billing range for Iweanoge is from January 2007 to April 2010. Thus, for a portion of the time billed, Iweanoge was eligible for the first band of rates, those for attorneys admitted to the bar for less than five years, or from $135-170. DCPS does not explain why this range of $35 between low and high is reasonable in this market; on the other hand I have no information on which I can predicate the conclusion that Iweanoge's services should be valued at the higher, rather than the lower rate. I will therefore use the lower rate in the absence of any justifiable reason provided by Iweanoge as to why he is entitled to the additional $35, as he has the burden of proof of showing the reasonableness of the fee he seeks. Thus, for Iweanoge for the billing period in 2007, his rate shall be adjusted to $135. Once Iweanoge had been practicing for five years, he was eligible for rates in the second range, $150-225. Iweanoge will therefore be awarded $150 an hour once he achieved the five year rate.

2. *Fees for the Law Office of Christopher N. Anwah*

The defendant also seeks fees for the work completed by the attorneys and paralegals[5] of the Law Office of Christopher N. Anwah, in accordance with the DCPS guidelines. Anwah and Fatmata Barrie have practiced law for more than eight years, and they seek hourly rates of $275, within the DCPS guidelines range for attorneys with eight years of experience. Without further information, however, I will not award fees at the high-end of that range, but will award fees for Anwah and Barrie at the low end rate of $200 an hour. Georgina Oladokun and Allen Mohaber

---

[5] Plaintiff complains that the Anwah invoice does not show who performed the work. Opp. at 7. But, while the invoice does not specifically indicate who did the work in each hourly entry, that information can easily be derived by relating the hourly rate in the entries to the billing rates on the last page so that, for example, a billing rate for $350 is for Anwah and a billing rate of $165 is for Annie Presley.

have practiced law for less than five years and seek fees at $170, pursuant to the guidelines. Again, in absence of any support for a higher rate, I will award fees for Oladokun and Mohaber according to the lowest rate, $135. Presley is described as a "law school graduate," but there is no indication that she has a license to practice law; as such, I will apply the guideline fees for a law clerk, $90, for her work. Lastly, paralegals Jacqueline Romero, Mireya Amaya, and Sandra Majano bill at a rate lower than the guidelines, and I will not make any adjustments to their rates.

B. <u>Hours Reasonably Expended</u>

The plaintiff asserts in its opposition that the defendant has failed to establish that the amount of time expended was reasonable. Fee applicants "may satisfy their burden of demonstrating that the number of hours expended on particular tasks was reasonable by submitting invoices that are sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" <u>Kaseman v. District of Columbia</u>, 329 F. Supp. 2d 20, 26 (D.D.C. 2004) (quoting <u>Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.</u>, 675 F.2d 1319, 1327 (D.C. Cir. 1982)). In order for such a submission to be sufficient, the fee applicant need not present "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." <u>Nat'l Ass'n of Concerned Veterans</u>, 675 F.2d at 1327 (quoting <u>Copeland v. Marshall</u>, 641 F.2d 880, 891 (D.C. Cir. 1980)). The defendant submitted billing entries along with his motion for attorneys' fees that set forth both the actual tasks performed and the time records for these tasks. The plaintiff challenges the appropriateness of particular time entries relating to Multidisciplinary Team / Individual Education Plan ("MDT/IEP") meetings, expert fees, "clerical" tasks such as filing motions and updating case files, and travel time or waiting. The

plaintiff also argues that the defendant's billing statements are replete with block billing, overly vague and inadequate, and excessive in the amount of time devoted to particular activities.

1. *IEP Meetings*

The plaintiff claims that the billing statements from Anwah wrongly include 27 billing entries entered between October 3, 2006 and March 7, 2007 relating to MDT/IEP meetings, totaling 9.56 hours. Opp. at 8. The terms of IDEA provide that "[a]ttorney's fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e)." 20 U.S.C. § 1415(i)(3)(D)(ii).

The defendant has failed to meet his burden in showing that these IEP meetings are compensable under the statute for he failed to provide an explanation of why the meetings met the exceptions for a " meeting [] convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e)." Id. I will not award fees related to these meetings; however, I only calculate 9.12 hours, and the award will be adjusted accordingly.

2. *Expert Fees*

The defendant seeks an award of $2,625.00 in costs for the fees charged by his expert witness, Derek Marryshow. See Def. Mot., Ex. 5. The Supreme Court has directly addressed this issue and determined that the "terms of IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants." Arlington Cent. Sch. Dist. v. Bd. of Educ., 548 U.S. 291, 300 (2006). Therefore, this Court will deny the defendant the award of $2,625.00 in costs for expert fees billed by Marryshow.

3. *"Clerical" Tasks*

Clerical work is not compensable. Jackson v. D.C., 603 F. Supp. 2d 92, 98 (2009) (citing Michigan v. EPA, 254 F.3d 1087, 1095-96 (D.C. Cir. 2001) (holding that "purely clerical tasks" are not reimbursable through attorneys' fees "because they ought to be considered part of normal administrative overhead")). The plaintiff complains about Iweangoe's entries for June 8, 2009, July 13, 2007, July 27, 2007, February 25, 2008, March 23, 2009, April 2, 2009 and August 18, 2009 on the grounds that these entries include the words "file" or "filing." Opp. at 9 n.1.

I have examined each of these entries, and while they may contain the words "file" or "filing," that is not the entire entry. Instead, the entry describes, in a manner typical of lawyers, that the lawyer did some work on a particular document and then "filed" it or "finalized" it–e.g., entries for August 18, 2009 ("Prepare and file motion to continue") and July 27, 2007 ("Review, edit, finalize and file reply"). Def. Mot., Ex. 2 at 2. As I understand the plaintiff's argument, the entire entry should be disallowed because one cannot tell how much of the time was spent on the clerical task of filing the document. Opp. at 9. But, the time required for Iweanoge to file the document over ECF is negligible. It would be splitting hairs to deduct from the award the seconds it took Iweanoge to log-on to ECF and upload his document with the Court and unfair to disallow the entire entry because the words "file" or "filing" appear in it when the rest of the entry adequately describes what the lawyer did. The entries about which the plaintiff complains are, in my view, otherwise adequate descriptions of what this lawyer did.

The entries of Mr. Anwah do present a different picture. In the entries before and after the filing of this lawsuit and the preparation of the answer, there are entries for updating the file or "updated case file re documents." Def. Mot., Ex. 3 at 1. I do not know what that means but if, as is

likely, it means putting documents in a file, it is most certainly a clerical task for which no compensation will be awarded.

4. *Travel Time*

Defendant claims $1,130 for travel time and waiting. Opp. at 10. The plaintiff argues that the defendant is not entitled to these fees. Id. Plaintiff is wrong; travel time may be compensated, but only at half the attorney's hourly rate. Doe v. Rumsfeld, 501 F. Supp. 2d 186, 193 (D.D.C. 2007) (citing Cooper v. U.S. R.R. Retirement Bd., 24 F.3d 1414, 1417 (D.C. Cir. 1994)). The entries that include travel and waiting time to hearings at the Court are block entries, and the Court cannot determine how much time was spent on travel; thus, I will compensate only half of the amount billed for 4/20/2007, 2/11/2008, and 10/5/2009. The total number of hours for these three entries is 6.55 hours. The reduction will be 3.28 hours. The rate for 2007 applies to the first entry, and the higher rate applies for the last two, so the total award reduction is $476.25.

5. *Inadequate Entries*

The plaintiff argues that some of the billing entries for the defendant's counsel are insufficiently detailed, and refer specifically to two entries, on 2/22/2008 and 1/28/2009. The first entry indicates that counsel "review[ed] Defendant's evaluations and conduct[ed] research," and the second entry states that he "prepare[d] response to order to show cause, including research." Def. Mot., Ex. 2 at 2. The plaintiff claims that this is not specific enough, because it is not clear what counsel was researching. Opp. 11. It is clear, however, that he is researching issues related to the defendant's evaluation and for his response to show cause. I do not find these entries to be too

vague, nor do I find the other entries that the plaintiff points to,[6] those related to teleconferences, conferences and e-mails, to be too vague. Id. at 12. In each the lawyer indicates what he is reviewing or what is the subject of the telephone call. That will suffice.

      6. *Excessive Billing*

Lastly, the plaintiff objects to the "excessive amount of time devoted to particular activities." Id.

First, the plaintiff argues that the amount of time the defendant's counsel spent doing research, 42.3 hours, and reviewing records, 28.6 hours, is "clearly unreasonable." Id. at 13. The plaintiff dismisses this amount of time on research because of the narrow scope of the issues presented by this case. It also finds that amount of time spent reviewing the record is unreasonable, and seeks a 50% deduction of the time spent doing research and reviewing the record.

The plaintiff unfortunately does not point to the entries that make up the 42.3 hours or the 28.6 hours it complains about in either the submission by Iweanoge or the one by Anwah. As best I can tell from a footnote in its opposition, it is complaining about entries that contain the word "research," even if the entry speaks of other activities. Opp. at 13 n.4.

I have reviewed Iweanoge's invoice and have found six instances where the word "research" appears. In three of them, the precise nature of the research being done is not specifically described (entries of Feb. 22, 2008, Jan. 28, 2009, April 2, 2009). Def. Mot., Ex. 2 at 2. In the other three, the nature of the research is clearly specified (entries of Oct. 2, 2009, Oct. 4, 2009 and Jan. 11, 2010). Id. at 3. There is nothing in these entries that justifies the plaintiff's claim that 42.3 hours are

---

[6] I.e., Febraury 22, 2008, November 25, 2008, December 11, 2008, December 17, 2008, September 9, 2009, and September 16, 2009.

allocated to research.

As to records review, there are only two entries in Iweanoge's invoice for records review (Feb. 22, 2008 and March 6, 2008). Id. at 2. Again, I can find no basis for the plaintiff's assertion that the defendant is seeking 28.6 hours for records review.

As to Anwah, beginning with the entries on January 31, 2007, there is, with one exception (November 15, 2007, which would fall under the "clerical entries" discussion above), an adequate explanation of why the records were being reviewed. See, e.g., entries of June 7, 2007, and February 22, 2008, Def. Mot., Ex. 3 at 4. Again, I can find no basis for the claim of 28.6 hours for excessive or unspecified record review.

7. *Time Spent Conferring with Administrative Counsel*

The defendant's counsel spent approximately 32.13 hours conferring with defendant's administrative counsel. Opp. at 14. The plaintiff asks the Court to reduce the defendant's award by 10% because of the excessive amount of time spent conferencing, and because the entries that include conferences include other tasks, so it is too difficult to parse what time was spent on conferences. Id. The plaintiff relies on Alfonso v. District of Columbia, 464 F. Supp. 2d 1, 5 (D.D.C. 2006), for its request for a 10% reduction. In reviewing the time logs, however, I find only 21.06 hours of entries where the word "conferencing appears" in the period of January 2007 to November 2009. Taking the plaintiff's best case–that counsel spent approximately seven hours a year conferring with administrative counsel–is not unreasonable. I will not make any further reductions.

8. *Hours Not Related to the Case*

Finally, the plaintiff argues that administrative counsel has requested fees for work not

15

related to the instant case, and requests that the Court make significant reductions accordingly. Opp. at 14. The plaintiff does not point to specific entries that cause concern, but generally states that, except for three entries, the "remaining entries appear to be extraneous and unrelated to the instant litigation regarding compensatory education." Id. The plaintiff does not provide any examples as to why the entries are extraneous or unrelated to the case, but simply that they "appear to be." I will not make the drastic reduction sought by the plaintiff based on an utterly conclusory and unspecified objection.

## C. Calculations

The fees sought by defendant will be adjusted according to the analysis above. The reduction to fees were calculated first, and then the reductions based on uncompensable time, at the newly calculated rates, were made. Thus, for Iweanoge, his total award claimed is $23,398.33; this will be reduced by $2,625.00 for the disallowed expert fees, a reduction of $5,917.85 for adjustments to counsel's rate, and finally a reduction of $476.25 for waiting time.[7] The resulting award would be $14,279.23.

Table 1. Adjustments and Final Award for Iweanoge

| Total Award Claimed with Expert Fees | $ 23,298.33 |
|---|---|
| Total Award Claimed, excluding fees | $ 20,672.00 |
| Reduction for Expert Fees | $ 2,625.00 |
| Reduction in line with DCPS | $ 5,917.85 |
| Reduction for Waiting Time | $ 476.25 |
| Total Adjusted Award | $ 14,279.23 |

The award for the Law Offices of Christopher N. Anwah will be adjusted, as well. Thus,

---

[7] There is a slight discrepancy of .01 hours between the total number of hours Iweagone claims, and the number of hours the Court finds when adding together all of the entries on his time log. Thus, Iweagone claims $20,673.33 for 103.37 hours, and the Court found the entries to add up to a claim of $20,672 for 103.36 hours.

the award claimed was $7,510.10; $2,476.75 will be deducted based on adjustments to reasonable rates claimed, $588.45 will be deducted for clerical work, and $820.80 will be deducted for IEP/MDT meetings and work. Thus, the final award is $3,624.10.

Table 2. Adjustments and Final Award for the Law Offices of Christopher N. Anwah

| | |
|---|---|
| **Total Award Claimed** | **$7,510.10** |
| **Reduction for DCPS** | **$2,476.75** |
| **Reduction for Clerical** | **$ 588.45** |
| **Reduction for IEP/MDT** | **$ 820.80** |
| **Total Adjusted Award** | **$3,624.10** |

### III. CONCLUSION

For the reasons stated herein, Defendant's Supplemental Post Judgment Motion for Attorneys' Fees and Costs [#53] will be granted in part and denied in part. The fees requested by defendant shall be reduced in accordance with the calculations made in this opinion. A separate Order accompanies this Memorandum Opinion.

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE